## WOOD vs. BEATH and another.

*What constitutes partnership — Dissolution decreed.*

1. Articles of agreement by which plaintiff leased to defendants certain lands, buildings and fixtures constituting a manufactory, and defendants agreed to use the same, putting in their money and personal labor, the net profits of the concern to be shared between the parties, *held*, to constitute a partnership.

2. Breaches of said articles, by defendants refusing to put in the amount of capital stipulated, or to manufacture articles as agreed, so as to make the works profitable, or to keep account of receipts and expenditures which

should be open to plaintiff's inspection, or to account at reasonable times to plaintiff, or to make payments to or for him out of the net profits of the concern, as agreed, *held*, sufficient ground for equitable relief by a dissolution of the copartnership.

APPEAL from the Circuit Court for *Kenosha* County.

On the 10th of October, 1866, the parties to this action executed an indenture, whereby *Wood* leased to the defendants for five years "the manufactory, shops, buildings, offices and structures of every description, with the tools and fixtures, implements and machinery therein," and the land on which they were situate, known as the "Badger State Agricultural Works," excepting from the lease certain tools and materials which defendants were to purchase at a valuation to be made in a specified manner. The defendants on their part agreed and covenanted to use said property, or cause it to be used, in such a manner as would "afford the greatest profit to the parties, in the manufacture of wagons or other articles of demand, at the rate of at least fifteen wagons per week, or to an equivalent value in other articles, agricultural implements, machinery and the like;" also to "devote all their time and energies to the production of the manufactures before described," and to furnish all the capital and labor required for the weekly production of the articles named, and to account to *Wood* "at reasonable periods of time" for the proceeds of said manufactures, or the profits made thereon, according to the spirit and tenor of this agreement; and that all daily transactions, purchases and sales should be entered upon defendants' books, which should be open at all times during business hours for inspection by *Wood*; and that "at stated periods" they would take an account of the profits of said establishment, and, after deducting the expenses of running the works and manufacturing the articles determined on, with all expenses for salaries, freight, commission, purchase or sale, government and local taxes and assessments, repairs and alterations of machinery,

insurances on stock and buildings, and other legitimate expenses of carrying on such establishment, they would account to *Wood* "for one-half of the net profits realized from time to time," reserving to themselves the remaining half thereof. *Wood* further agreed that defendants should be allowed from the gross profits of the manufactory, a salary of $2,000 per annum, and that out of *his* share of the net profits, "the lessees" should have a right to pay upon his indebtedness to a certain bank $2,000 and interest, within six months from the time of the execution of said agreement, and $1,000 at the expiration of every three months thereafter, with interest, so long as this agreement should continue to exist, or until his said indebtedness should be fully paid, or this agreement suspended by another between the parties; and that he would give possession of said premises on the 15th of said month of October; and in case defendants should advance capital to an amount exceeding $20,000, they should be allowed interest on said excess out of the gross profits of the manufactory.

On the 22d of June, 1867, *Wood* notified defendants, in writing, that whereas they had committed certain specified breaches of their agreements in said indenture contained, if they did not perform said agreements on their part before the 30th of that month, he should consider the contract rescinded, excepting their liability to him for damages; and also required them to deliver to him possession of the premises mentioned in said contract. The breaches alleged in this notice are the same specified in the opinion, *infra*. In July following, *Wood* brought this action, in which, after alleging the contract and the breaches thereof as mentioned in said notice, to his damage in the sum of $20,000, he asks an injunctional order temporarily restraining defendants from using said property, and also prays for a permanent injunction of the same character, and that "said agreement and lease" be adjudged to have been violated on the part of defendants, and that it be rescinded, and defend-

ants ordered to deliver up to him all of said property, and that he recover a just compensation for the use and occupation thereof by defendants, and for the damages, loss, wear, and destruction of said property while in the defendants' possession; and also that he "recover for the various breaches of the said agreement, above set forth, and the damage to him in consequence of the causes of action above stated, to the sum of $20,000;" and for general relief.

A demurrer to the complaint, as not stating a cause of action, was sustained; and the plaintiff appealed.

*F. S. Lovell,* with *Bennett & Ullman,* of counsel, for appellant, contended that the agreement between the parties constituted them partners; and that the complaint shows ground for the interference of equity to dissolve the partnership, and for other equitable relief as asked. Collyer on Part. § 119, note 5, and § 121; 3 Kent, 55; Story on Part. §§ 270, 288, note 3, and authorities there cited; 19 Johns. 538; 15 Maine, 180. All leases held of an individual partner are determined by the dissolution, and the lessor may re-enter without giving notice to quit. 1 Starkie, 181; 8 C. & P. 464.

*O. S. Head,* for respondents:

1. If the articles of agreement constitute a *lease,* can the plaintiff have restitution of the premises before the expiration of the term, by reason of a breach of the agreement on the part of the lessees, otherwise than by an action of unlawful detainer? 2. This action cannot be sustained as one for rent, because it does not appear that any rent is yet due, but it is charged that the establishment has been so managed as to yield no profits, in which case nothing can be due as rent. 3. As to the alleged breach of the covenant to account, these accounts were to be taken "at stated periods," and by clear implication these periods were to be at intervals of not less than a year. The method of taking these accounts is prescribed, and from the gross receipts are to be deducted all expenses for *salaries,*

*taxes and assessments, insurance,* etc. Provision is made for an *annual salary,* to be paid defendants out of the gross *profits.* By the laws of this state and the United States, the taxes to be deducted are levied annually. Hence, before the expiration of the year no such account could be taken. 4. The covenant to pay certain sums to the bank on plaintiff's indebtedness was conditioned upon the existence of net profits; and an accounting must be had herein, before it can be determined that this covenant has been broken. But the complaint does not ask for an accounting. 5. Counsel argued that under the agreement the parties were partners; one partner cannot, at common law, sue his copartner in assumpsit for money advanced, save upon an account stated and balance struck, and as between them covenant does not lie, except upon an agreement whose performance is necessary for the purpose of launching the partnership, etc. The rule has not been disturbed by the Code. *Lower v. Denton,* 9 Wis. 268; *Miller v. Price,* 20 id. 117.

Cole, J. The counsel on both sides concede that the agreement referred to in the complaint constituted the parties to it partners during its continuance. And this is undoubtedly the correct interpretation of that agreement. The plaintiff contributed toward the business his manufactory, shops, with tools, implements and machinery therein, and the land upon which they were situated; and the defendants were to furnish capital to the amount of $20,000, and labor, to carry on the business. They were to account to the plaintiff " at reasonable periods of time for the proceeds " of the business, or for the profits made thereon; all daily transactions were to be entered on the books, to which the plaintiff was to have access; at stated periods an account was to be taken of the profits, which, after deducting the costs and expenses of running the works, and certain specified charges, were to be divided between the parties. Thus there was to be a community of interest in the capital to carry

on the business, and a community of profit and loss; and this rendered them partners. This being so, what is the object of this action? It is manifestly a suit in equity for a rescission of the articles of copartnership; for a dissolution of the partnership; for damages for the various breaches of the agreement set forth in the complaint; for a restitution of the property to the plaintiff; and for general relief. It is very obvious that this presents a case of equitable cognizance; and if the complaint states a sufficient cause, the partnership will be dissolved.

There are various breaches of the partnership agreement alleged in the complaint. The agreement provides, that the defendant should put in $20,000 capital, and that the works should be used in such a manner as would afford the greatest amount of profit to the parties concerned, in the manufacture of wagons or other articles of demand, at the rate of at least fifteen wagons per week, or to an equivalent value of other articles. It is alleged, that the defendants have not kept this covenant, but have used the works in such a manner as to deprive the plaintiff of all rents and profits of his property, and that they are fast wearing out the machinery and fixtures of the plaintiff.

It is further alleged, that they have neglected and refused to account to the plaintiff at reasonable periods of time, or at any time, for the proceeds of the manufacture, or the profits made therein, according to the spirit and tenor of the agreement. In the argument of the counsel for the respondents it is claimed, that the clear and necessary implication from the language of the agreement is, that the accounting was to cover one year at least, and that the complaint failed to show a breach of this covenant. It is true, the agreement does not state the precise times when the accounting was to be had; at one place it is stipulated that the defendants should " account to the party of the first part at reasonable periods of time for the proceeds of said manufacture, or profits thereon, according to the spirit and

tenor of the agreement;" and again they agreed "at stated periods to take an account of the profits of the establishment," etc.; but, considering the whole agreement, we are satisfied that the parties contemplated an accounting oftener than once a year. This is evident from the clause which provides that the defendants might pay out of the plaintiff's share of the net profits, to the First National Bank of Kenosha, the sum of $2,000, within six months from the time of the execution of the agreement — a stipulation which could not be complied with if there was to be only a yearly accounting. Nine months had elapsed, when this action was commenced, since the agreement was executed; and we have no hesitation, therefore, in holding, upon the allegations of the complaint, that there was a violation of the covenant to account. There are also other breaches alleged, on the part of the defendants, of the articles of copartnership, such as a neglect to enter upon the books all the daily transactions, purchases, etc.; and, also, a refusal to permit the plaintiff to inspect the books. These, with other matters set forth in the complaint, certainly show great misconduct on the part of the defendants, and afford a sufficient ground, if sustained by evidence, to authorize a dissolution of the partnership. They show that the defendants have failed to contribute their amount of capital; that the business is not profitably and beneficially conducted; that the plaintiff's property is being greatly injured; and that he is excluded from an inspection of the books, and cannot secure an accounting according to the agreement.

This is the cause of action presented by the complaint. We think it is sufficient to warrant a court of equity in interfering and dissolving the partnership. The demurrer to the complaint was, therefore, improperly sustained.

*By the Court.*—The order of the circuit court sustaining the demurrer is reversed, and the cause remanded for further proceedings according to law.