NATHANIEL WEBSTER, PLAINTIFF IN ERROR, VS. JOHN CLARK, SON & CO., DEFENDANTS IN ERROR.

1. One who is not actually a partner, and who has no interest in the partnership, can not by reason of having held himself out to the world as a partner be held liable as such on a contract made by the partnership with one who had no knowledge of the holding out.

2. When one does not allow the public or individual dealers to be deceived by the appearances of a partnership, the true test of whether a partnership does in fact exist between the parties is to be found in their intent as shown by the contract which they make, and names amount to nothing when the substance of the agreement shows them to be inapplicable.

3. Where parties enter into a trade arrangement upon such a basis as that they have a community of interest in the capital stock

engaged in the business, and also a community of interest in the profits resulting therefrom, the uniform rule is that they will be held to be partners in such a venture.

4. Where the agreement under which a business arrangement is carried on, and which is claimed to be a partnership, is in writing and free from ambiguity or doubt, its legal effect must be determined as a matter of law and the intention of the parties gathered therefrom, but if the terms employed leave the true meaning in doubt, the construction put upon the contract by the parties thereto may be looked to in determining its legal effect.

Writ of Error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*A. W. Cockrell & Son,* for Plaintiff in Error.

*John E. Hartridge* and *W. B. Young,* for Defendants in Error.

MABRY, J.:

Defendants in error as partners under the firm name of John Clark, Son & Co., sued plaintiff in error and E. Rigney as late partners doing business in the firm name of E. Rigney & Co., in an action of assumpsit for goods sold and delivered to the latter firm by the former. Webster interposed pleas that he was never indebted as alleged, and that he was not a partner of Rigney under the firm name and style of E. Rigney & Co., as set up in the declaration. Rigney did not defend. A trial before a referee resulted in a judgment in favor of plaintiffs below against defendants Webster and Rigney, as late partners doing business under the firm name of E. Rigney & Co., for the amount of plaintiffs' demand, and Webster sued out

## JUNE TERM, 1894. 639

Nathaniel Webster v. John Clark, Son & Co.—Opinion of Court.

a writ of error from the judgment. Rigney has refused to join in the writ of error, and the prosecution of the same here is on behalf of Webster alone.

Rigney bought the goods sued for, being such as are usually sold in a saloon business, and the only question involved is whether or not Webster can be held liable as a partner of the firm of E. Rigney & Co. Plaintiffs introduced in evidence the following instruments in writing, *viz:*

"STATE OF FLORIDA,
COUNTY OF DUVAL.

This indenture made this fifteenth day of February, A. D., 1886, by and between Nathaniel Webster, of Gloucester, Mass., of the first part, and Edward Rigney, of Jacksonville, Fla., of the second part, witnesseth: That the party of the first part, for and in consideration of the rents, covenants and agreements hereinafter mentioned, reserved and contained on the part and behalf of the party of the second part to be paid, kept and performed, hath leased and demised, and by these presents doth lease and demise unto the party of the second part for the full period and term of fourteen months from the date of these presents, the billiard and bar room on Julia street in the Everett hotel in the city of Jacksonville, Fla., with all the furniture contained therein, excepting the bar and bar fixtures and billiard tables and their equipments, which are to be paid for and owned equally by Nathaniel Webster and Edward Rigney. And the party of the second part shall pay unto the party of the first part the sum of two hundred and eight dollars and thirty-three cents per month in advance, and also such other sum of money as shall equal one-half of the net profits of the billiard and bar room hereinbefore mentioned. And it is also distinctly

640 SUPREME COURT.

Nathaniel Webster v. John Clark, Son & Co.—Opinion of Court.

understood and agreed by both parties that the net profits may consist of cash and goods on hand after all necessary bills and expenses shall have been paid.

NATHANIEL WEBSTER. [SEAL.]
EDWARD RIGNEY. [SEAL.]

Signed, sealed and delivered in presence of

S. I. BRADLEY.

P. F. WETHINGTON."

"JACKSONVILLE, FLA., Feb. 15, 1886.

It is understood that there shall be no net profits until Mr. E. Rigney receives as compensation for his services and for the use of money advanced by him to pay for the bar and bar fixtures and billiard tables and billiard fixtures to carry on the business, a sum equal to the amount of rent paid Mr. Nathaniel Webster.

NATHANIEL WEBSTER.
EDWARD RIGNEY.

Witnesses:

S. I. BRADLEY.

P. F. WETHINGTON."

Witnesses were examined for plaintiffs and defendants, and among them Rigney testified as a witness for plaintiffs, and Webster testified in his own behalf. It appears from the record that all objections to the testimony were reserved for final discussion and disposition by the referee, but it is not shown that any objections were made to the testimony either before or at the final hearing.

It appears from testimony before us that J. M. Lee operated the Everett hotel in Jacksonville as proprietor during the season of 1885 and 1886, and for that time he let Webster have the wine and saloon privilege of the hotel for $1,000. On settlement between Lee and Webster this amount was reduced in consequence of the late opening of the hotel to $333.33.

## JUNE TERM, 1894. 641

Nathaniel Webster v. John Clark, Son & Co.—Opinion of Court.

Lee receipted E. Rigney & Co. for the reduced amount, and it is recited in the receipt that the understanding was that Rigney & Co. should pay $1,000 for the season of 1886 and 1887. In arranging for the wine and liquor privilege of the hotel, Lee negotiated with Webster personally, and while he knew that Rigney was to have charge of the bar room in the hotel, he did not know what was the understanding or contractual relation between Webster and Rigney.

Rigney testified that he and Webster were equal partners in the saloon business in the Everett hotel, and that the partnership was carried on under the written agreements above recited. He stated that the firm name of the partnership was not set out in the agreement because Webster did not want it known that he was a partner in the business, and that he (Rigney) did not disclose the fact unless it was necessary to do so. In making application for U. S. revenue license, which he did in the name of E. Rigney & Co., he was informed that the individual names of the partners would have to be set out in the sworn application, and in the presence of Webster the application was made before the revenue officer in the name of Edward Rigney and Nathaniel Webster, doing business in the firm name of E. Rigney & Co. The deputy revenue collector testified that he, by request, went to where Webster and Rigney were in the hotel and informed them of the necessity of inserting the individual names of the partners in the application for license, and that Webster's name was inserted in his presence, and that he then stated that he was a partner in the business. Rigney also stated that for the season of 1886 and 1887 he paid Webster $500, one-half of the hotel privilege, and a check for this

amount, payable to the order of Webster and endorsed by him, was introduced in evidence. J. H. Spillman, a traveling salesman at the time for a manufacturing establishment of billiard tables and saloon fixtures, testified for plaintiffs that he visited Jacksonville and sold billiard tables to Nathaniel Webster for E. Rigney & Co., and that Webster stated to witness that he was a partner in the company of E. Rigney & Co. Also that Rigney informed witness that Webster was doing the buying for the firm. W. H. Hellen testified that he was bar tender at the saloon in the Everett hotel for ten or twelve weeks, and during that time Nathaniel Webster was often in the bar, and told witness what to do. On one occasion Webster directed witness to open the bar earlier in the morning than he had been in the habit of doing, and would order drinks and not pay for them, and they were not charged to him.

The goods sued for, it seems, were bought by Rigney in person, and the original entries were against him individually, but the journal account of plaintiffs was against E. Rigney & Co.

Webster denies that he was ever a partner of Rigney, and states that the only relation between them was that of landlord and tenant under the written agreements hereinbefore mentioned, and which had not been changed during the continuance of the saloon business by Rigney in the Everett hotel. He says that the writings were not intended to create a partnership, and that it was understood between the parties thereto at the time that no partnership should exist thereunder. The purpose of the writings, as testified to by Webster, was to definitely fix the relation of landlord and tenant, and that the rent was fixed at so much certain, and a further sum dependent upon the net profits of the business to be conducted by Rigney.

JUNE TERM, 1894. 643

Nathaniel Webster v. John Clark, Son & Co.—Opinion of Court.

One witness testified that he frequently visited the bar with Webster, and that the latter when ordering drinks would pay for them as other customers, and that witness saw no difference in that respect between Webster and other customers. Rigney, in rebuttal, denied that it was understood at the time the writings were drawn up that no partnership was to exist between the parties; but, on the contrary, it was distinctly understood that they were equal partners under the agreements, and that before the execution thereof, Webster wrote letters to him in reference to a copartnership between them. The record shows that in portions of letters from Webster to Rigney reference is made to the purchase of cash machines for the saloon business, and Webster says in the letter that he wrote to parties "describing our bar, and enquiring of them if we could not make one machine answer our purpose; that we should not have but one cashier for both bar and billiard room." And after stating that two machines had been ordered, he says: "I thought we might save the price of both machines in one season." The saloon business was conducted in the name of E. Rigney & Co. There was no testimony in reference to a knowledge on the part of the plaintiffs of the facts above recited, or of any connection of Webster with the firm of Rigney & Co. before the goods were sold and delivered.

It is contended for plaintiff in error that if Webster held himself out, or permitted himself to be held out, to the world as a partner of the firm of E. Rigney & Co., liability for the goods sued for would attach to him, although he was not in fact a partner of said firm. It is true that one who holds himself out, or permits himself to be held out, as a partner may be held liable as such, independent of the actual existence of such

relation; but the liability in such a case rests upon the principle of estoppel, that by holding himself out, or permitting himself to be held out, as a partner he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the person so held out as a member of the firm. As the liability in such a case rests solely upon the ground that one can not be permitted to deny a partnership relation which, though not existing in fact, he has assertsd or permitted to appear to exist, there is no just foundation for holding one liable as a partner when in fact he was not one, although held out as such, when the creditor did not know of the holding out and did not act upon the supposition that the person sought to be charged was a partner in a firm when dealings were had with and credit given to said firm. The rule is correctly stated, we think, in the case of Thompson vs. First National Bank of Toledo; 111 U. S., 529, where it was held that a person who is not actually a partner, and who has no interest in the partnership, can not by reason of having held himself out to the world as a partner, be held liable as such on a contract made by the partnership with one who had no knowledge of the holding out. Wood vs. Pennell, 51 Maine, 52; Cook vs. Penrhyn Slate Company, 36 Ohio St., 135; Hicks & Co. vs. Cram, 17 Vt., 449; Seabury & Johnson vs. Bolles, 51 N. J. L., 103. In this connection it may be stated, as was observed in the case of Thompson vs. First National Bank of Toledo, that there may be cases in which the holding out has been so public and so long continued that a jury may infer that one dealing with the partnership knew it and relied upon it, without direct testimony to that effect. On the testimony before us it can not successfully be maintained that the plaintiffs below were entitled to a

judgment on the ground that Nathaniel Webster held himself out to the world as a partner of Rigney, if he were not in fact such partner. There is no testimony that the plaintiffs believed, or had any reason to believe, that Webster was a partner. There is testimony that he stated to the revenue officer and to the traveling salesman Spillman that he was a partner, but we do not know that plaintiffs were ever informed of such declarations before the goods were sold to Rigney & Co. The further fact, testified to by another witness, that Webster was often in the bar room and gave directions to the bar tender, in the absence of any showing that plaintiffs were cognizant of such facts, if they existed, will not justify a finding against Webster solely on the ground that he held himself out to the world as a partner. If the finding of the referee can be sustained on the testimony before us, it must be on the ground that Webster was in fact a partner of the firm of E. Rigney & Co.

As to partnership liability, it was formerly broadly laid down that every one who shared in the profits of a trade or business ought also to bear his share of the losses, for the reason that, by taking a part of the profits, he takes a part of the fund of the business upon which the creditors had a right to rely for payment. This was the rule announced in the case of Waugh vs. Carver, 2 H. Blackstone, 235. In the application of this rule the courts began to add qualifications and to make distinctions that were not of easy application. It was said in some cases that a sharing in the profits in order to render one liable as partner must be a participation therein as principal, and the test applied in other cases was that the party entitled to a part of profits was a partner if he had a lien thereon as against the private creditors of the other

members of the firm. The question was very much discussed in England in the case of Cox vs. Hickman, 8 H. L. Cases, 268, and it seems to be generally conceded that this case modified materially the rule formerly announced on the subject. It is said of this case that it brought back the English law to the true rule. The facts, in brief, were, that two merchants became embarrassed and assigned their partnership property to trustees with direction and authority for them to carry on the business in a new name, and pay the net profits ratably among the creditors of the assignors, and after the creditors were paid, the residue to go to the assignors. The creditors joined in the deed of assignment, and a majority of them had authority to make rules for the conduct of the business, or to end it if they saw proper. Debts were contracted by the trustees in conducting the business under this management, and it was held that the creditors were not liable as partners for the debts. Several opinions were rendered in the case, and those of the majority do not seem to rest upon the same grounds. It has been considered that the decision put the liability of one partner for the acts of his copartner upon the doctrine of the liability of a principal for the acts of his agent, the test of liability being in the fact that one has authorized the managers of the business to carry it on for him, and that while the right to participate in the profits was cogent, it was not conclusive evidence that the business was carried on in part for the person receiving a part of the profits. There is found in the books a great deal of discussion on the subject of partnership liability. The following authorities, among the many, contain a thorough review of the decisions on the old rule, as it is called, and the modifications thereof: Eastman vs.

Clark, 53 N. H., 276; Parchen vs. Anderson, 5 Montana, 438; Boston & Colorado Smelting Company vs. Smith, 13 R. I., 27; Culley & Son vs. Edwards, 44 Ark., 423; Denny vs. Cabot, 6 Met., 82; Meehan vs. Valentine, 145 U. S., 611; Beecher vs. Bush, 45 Mich., 188. This court, in the case of Dubos & Co. vs. Hoover, Jones & Bowen, 25 Fla., 720, 6 South. Rep., 788, quoted with approval the definition of a partnership given by Judge Story, *viz:* "Partnership, often called copartnership, is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them." Story on Partnership, (6th ed.), sec. 2. It seems that when Judge Story wrote his book on partnership he conceived the liability of one sought to be charged as a partner to rest upon the law of principal and agent, and his view is quoted with approval in one of the opinions delivered in the case of Cox vs. Hickman.

A reference to agency as a test of partnership has not, it seems, proven a correct guide in many cases, as agency results from partnership rather than partnership from agency. It is said in Meehan vs. Valentine, *supra:* "Such a test seems to give a synonym, rather than a definition, another name for the conclusion, rather than a statement of the premises from which the conclusion is to be drawn. To say that a person is liable as a partner, who stands in the relation of principal to those by whom the business is actually carried on, adds nothing by way of precision, for the very idea of partnership includes the relation of principal and agent." In this case it is said: "The requisites of a partnership are that the parties must

have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits." Judge Cooley says for the court in Beecher vs. Bush, *supra*, "that in so far as the notion ever took hold of the judicial mind that the question of partnership or no partnership was to be settled by arbitrary tests it was erroneous and mischievous, and the proper corrective has been applied. Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of a partnership are to be found." The same view is announced in the recent English case of Mollwo, March & Co. vs. Court of Wards, L. R., 4 Privy Council App. Cas., 419. And in Section 49 of his work on Partnership, Judge Story says: "In short, the true rule, *ex aequo et bono*, would seem to be, that the agreement and intention of the parties themselves should govern all the cases. If they intended a partnership in the capital stock, or in the profits, or in both, then, that the same rule should apply in favor of third persons, even if the agreement were unknown to them. And, on the other hand, if no such partnership were intended between the parties, then, that there should be none as to third persons, unless where the parties had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons."

Where the agreement under which a business arrangement is carried on, and which is claimed to be a partnership, is in writing and free from ambiguity or doubt, its legal effect must be determined as a matter of law, and the intention of the parties gathered there-

from. We quote the language of Judge Cooley in the case referred to as expressive of the correct rule: "It is nevertheless possible for parties to intend no partnership and yet form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners. The law must declare what is the legal import of their agreements, and names go for nothing when the substance of the arrangement shows them to be inapplicable. But every doubtful case must be solved in favor of their intent; otherwise we should 'carry the doctrine of constructive partnership so far as to render it a trap to the unwary.'" The last expression is quoted by him from Chancellor Kent in Post vs. Kimberly, 9 Johns., 470. The test of partnership, then, is to be found in the intent of the parties themselves as shown by the contract which they make. Where parties enter into a trade arragement upon such a basis as that they have a community of interest in the capital stock engaged in the business, and also a community of interest in the profits resulting therefrom, the uniform rule is that they will be held to be partners in such a venture. Dame vs. Kempster, 146 Mass., 454. On the other hand, it has always been held that an agent or servant, whose compensation is measured by the profits of a partnership business, is not thereby made a partner. In Holmes vs. Old Colony Railroad Corporation, 5 Gray, 58, it was held that a railroad corporation by leasing a house owned by it to a party to be run as a hotel, the lessee to pay a certain sum annually and half the net proceeds arising from keeping the house, and keep an account open for inspection by the corporation, and have free passage over the railroad for himself and all persons

650                SUPREME COURT.

Nathaniel Webster v. John Clark, Son & Co.—Opinion of Court.

employed and all articles used in carrying on the hotel, did not thereby become partner in the hotel business. The mere leasing of a hotel for a certain part of the net profits will not make the lessor a partner in the hotel business. This was decided in Beecher vs. Bush, *supra*. Nor does the renting of a building for a saloon under an agreement to take half of the profits made out of the business done therein as rent make the renter a partner in the business. Thaylor vs. Augustine, 55 Mich., 187. In another case the plaintiff contributed towards the business his manufactory, shops, tools, implements and machinery and the land upon which they were situated; the defendants were to furnish a certain sum as capital, and labor to carry on the business. Defendants were to account to the plaintiff at reasonable periods for the proceeds of the business or the profits thereof, and all daily transactions were to be entered on the books, to which plaintiff was to have access, and at stated periods an account was to be taken of the profits, which, after deducting the costs and expenses of running the works and certain expenses, were to be divided between the parties. It was held that there was a community of interest in the capital to carry on the business, and also a community of interest in the profits, and a partnership was thereby created. Wood vs Beath, 23 Wis., 254.

The writings produced in evidence in the case before us must be considered together as one instrument. They were executed on the same day, and it is not questioned that they were intended to express the agreement of the parties on the subject to which they relate. The agreement contains formal parts of a lease, reciting, in substance, that in consideration of the rents, covenants and agreements therein contained to be paid, kept and performed on the part of the second

party, the first party doth lease and demise for the term of fourteen months the billiard and bar room on Julia street in the Everett hotel in the city of Jacksonville for $208.33, in advance, per month, and a further sum equal to one-half of the net profits of the billiard and bar room mentioned. There are clauses as to the ownership of the bar and bar fixtures, billiard tables and their equipments, and as to the ascertainment of the net profits. The mere form of the agreement can not alone determine its legal effect, nor is the difference between receiving a sum equal to one-half of the net profits, and a sharing in the profits themselves, material, if it was in fact intended by the instrument that Webster should have one-half of the net profits of the bar business. If the agreement amounts to nothing more than a lease from Webster to Rigney of the Everett billiard and bar room for $208.33 per month, and a further sum equal to one-half of the net profits resulting from the bar and billiard business conducted in the room, it is clear from the authorities that a partnership would not thereby be created. The fact that deductions are to be made from the net profits to an amount equal to the sum to be paid as rent, would make no difference. The other clauses in the agreement referred to, and which we are not at liberty to disregard, indicate, in our judgment, that something more than a mere lease of the bar and billiard room was contemplated by the parties in reference to the business carried on in the room. The "bar and bar fixtures and billiard tables and their equipments" were to be paid for and owned equally by both parties. If the terms "bar and bar fixtures and billiard tables and their equipments" can not be held to embrace the entire stock, including the liquors and wines, engaged in the business, they do include a portion of the capital stock

employed. The net profits arising from the billiard tables are to be considered under the agreement in ascertaining the additional sum to be paid to Webster, and bar fixtures are customary equipments for the conduct of a saloon business. Webster, as is clearly shown by the agreement, was to be half owner in such equipments, as well as the billiard tables, and it has been uniformly held that where parties have a community of interest in the capital employed, and also a community of interest in the profits, they are partners as to third parties. The proof shows that Webster in person bought the billiard tables for the bar business conducted by E. Rigney & Co., at the same time stating to the seller that he was a partner in the business. But in addition to the clause that Webster was to be an equal owner of the "bar and bar fixtures and billiard tables and their equipments," other provisions indicate, it seems to us, a joint interest by Webster and Rigney in the bar business. There were to be no net profits until Rigney received as compensation for his services and for the use of money advanced by him to pay for the bar and bar fixtures and to carry on the business, a sum equal to the rent paid to Webster. This means the fixed sum of $208.33 per month which Webster was to receive. This implies that Rigney was to receive out of the net profits compensation for his services and for the use of money advanced by him to pay for the bar and bar fixtures and to carry on the business, a sum equal to the sum to be paid to Webster as rent. The bar and bar fixtures, billiard tables and their equipments were, beyond question, the joint property of both parties, and an agreement that Rigney was to be remunerated out of the net profits to the extent of $208.33 per month for money advanced by him to pay

for the bar and bar fixtures and to carry on the business, implies that he has expended more than his share in paying for the bar and bar fixtures and to carry on the business. The terms "money advanced by him to pay for the bar and bar fixtures and to carry on the business" naturally imply that such was the case. The fact that compensation for Rigney's services was also provided for out of the net profits arising from property in which Webster unquestionably had a joint interest tends to strengthen the view that both parties were interested in the bar business as joint owners.

While the rule is clear that a written contract free from ambiguity can not be varied by parol testimony, yet if the language employed leaves the true meaning in doubt, the construction put upon the contract by the parties thereto may be looked to in determining its legal effect. The weight of the testimony in the present case is to the effect that both Webster and Rigney considered themselves as partners under the instrument in question.

In our judgment the written agreement discloses a partnership transaction in which both parties had a community of interest in the capital stock employed in business, and also a community of interest in the profits resulting therefrom; and this being the case they were partners as to third persons and liable as such. The fact that the real transaction is sought to be concealed under the guise of a lease, as is apparent, can not change the legal effect of the agreement, and is unimportant in arriving at the real intent of the parties as expressed in the entire instrument.

The conclusion we have reached is, that the judgment appealed from should be affirmed, and it will be so ordered.