350 So.2d 539 (1977)
COUNTRY CLUBS OF SARASOTA, LTD., Appellant,
v.
ZAUN EQUIPMENT, INC., Appellee.
No. FF-125.
District Court of Appeal of Florida, First District.
October 5, 1977.
*540 John W. Griffis, III, of Trawick, Griffis & Ferrell, Sarasota, for appellant.
Robert A. Skeels of Milam & Wilbur, Jacksonville, for appellee.
McCORD, Chief Judge.
This interlocutory appeal is from an order denying appellant's (garnishee's) motion for relief from final judgment in garnishment entered upon a default which had been entered on the same day. As to appellant's contention that appellee did not obtain legal service of the writ of garnishment, we disagree. As to appellant's further contention that the default and the final judgment entered thereon should have been set aside by the trial court, we agree and reverse.
Appellant Country Clubs of Sarasota, Ltd., is a Florida limited partnership organized and existing under the Florida Limited Partnership Law Part I, Chapter 620, Florida Statutes (1975). It was formed with two general partners in late 1975; RMS Development Corp., a Florida Corporation, and Florida Country Clubs, Inc., a Florida Corporation, referred to hereafter as RMS and FCC respectively. Subsequent to appellant filing its certificate of limited partnership *541 and limited partnership agreement with the Florida Department of State, it duly filed and recorded with that Department amendments to its certificate of limited partnership and limited partnership agreement twice during the next few months. The most recent amendment, dated April 1, 1976, listed FCC as a general partner with plenary authority over the affairs of garnishee including exclusive control over appellant's business and its managements, exclusive authority to borrow or lend money on behalf of appellant; exclusive authority to disburse appellant's funds; exclusive authority to execute instruments conveying appellant's property; and authority to defend in its own name or in appellant's name all civil suits against appellant. At no time material to this action did appellant further amend its certificate of limited partnership and limited partnership agreement.
This garnishment action was predicated upon a judgment in appellee's favor against Gulf-To-Bay Lawn Sprinklers of Sarasota, Inc., in the amount of $8,549.14. Based upon information appellee had received to the effect that appellant owed Gulf-To-Bay Lawn Sprinklers between $7,000 and $8,000, appellee obtained issuance of a writ of garnishment against appellant. Before doing so, however, appellee's attorney obtained from the Department of State the latest information on appellant's composition, and the officers and agents of its corporate general partners. The writ was served on appellant on August 31, 1976, through its general partner FCC by personally serving David A. Steves, FCC's registered agent, for service of process and also FCC's attorney. Thereafter, Mr. Steves called appellee's attorney to advise that he had been served with the writ and to obtain additional time to respond. Subsequently, appellee's attorney received a letter from Mr. Steves confirming that appellant would have an additional 20 days to respond to the writ. When this time expired, appellee's attorney called Mr. Steves, and Steves requested and was extended an additional week to 10 days to respond. When this time elapsed with no response being filed, appellee's attorney wrote Mr. Steves a letter. Several days later Mr. Steves called appellee's attorney and either told him to go ahead and take a default because his people didn't think anything could be done about it (he had previously stated that he considered the service was deficient) or told him that they were not going to take any action. Mr. Steves testified that his only contact in this matter was with the officials of FCC; that he had no connection with RMS. Following the attorney's last above communication with Steves, appellee obtained a default judgment and a final judgment on November 24, 1976, for the full amount of its claim against Gulf-To-Bay Lawn Sprinklers  $8,549.14.
At the hearing on the motion to set aside the final judgment, appellant put in evidence an assignment dated August 7, 1976, of FCC's partnership rights, title and interest in appellant to RMS. Robert A. Schroeter, credit manager of appellee, testified as follows to statements made by Mr. Salsman, vice-president of RMS, in regard to the garnishment:
"Q O.K. What were the statements that Mr. Salsman made in regard to the purported writ of garnishment?
"A He said something had come across his desk with the name Gulf-To-Bay, a garnishment, Gulf-To-Bay, and he did not pay much attention to it because of the fact it was Gulf-To-Bay and something about he didn't pay much attention to it.
"Q Did he ever make any reference to whether he saw a writ of garnishment?
"A He didn't know what it was, he said with the name Gulf-To-Bay. He said he didn't know exactly what it was."
It is entirely unclear whether or not the paper that went over Mr. Salsman's desk was the writ of garnishment or the final judgment in garnishment. Appellant contends that FCC at the time of service of the writ of garnishment was no longer a corporate general partner of appellant and that § 48.061, Florida Statutes, does not permit process against a limited partnership by service on the resident agent of a former corporate general partner. § 48.061(2) provides:

*542 "Process against a domestic limited partnership shall be served on any general partner and is as valid as if served on each individual member thereof. After service on any general partner, plaintiff may proceed to judgment and execution against the limited partnership and all of the general partners individually. Service of process may be made under §§ 48.071 and 48.21 on limited partnerships."
Appellant contends that the foregoing statute requires personal service on a corporate general partner and that such can be accomplished only by serving corporate officers or directors. Nothing in the above statute, however, makes this requirement. Strictly speaking, there can be no personal service upon a corporation because it is a fictitious person. There can only be such constructed or substituted service as the law may provide. Clearwater Mercantile Co. v. Roberts, Johnson, Rand Shoe Co., 51 Fla. 176, 40 So. 436 (1906). Personal service on a corporation means personal service on its officers or agents. Smetal Corporation v. West Lake Inv. Co., 126 Fla. 595, 172 So. 58 (Fla. 1936). § 48.081, Florida Statutes (1975), provides for such personal service on officers or agents of a corporation including, as an alternative to all corporate officers, the registered agent designated by the corporation to accept service of process on its behalf. Thus, in the case sub judice, service upon the registered agent of FCC is as good personal service as may be obtained on FCC and such service upon FCC is legal service upon a partnership of which it is a member.
Appellant cannot rely upon FCC's assignment of its partnership interest to appellant's other general partner RMS to defeat service of process. At the time of such service, appellant held itself out to the world through its certificate of limited partnership on file with the Florida Department of State as a partnership whose partners were FCC and RMS. In reliance upon appellant's act, appellee served FCC. If that service were to now be held invalid, appellee will have acted to its detriment in reliance upon appellant's act. Appellant is therefore estopped to deny that FCC was no longer a partner at the time of service.
Appellant also contends that the default judgment should be set aside because it did not know of the service of the writ of garnishment and is not guilty of any gross negligence in failing to respond to the writ. Having ruled that the court had jurisdiction, we must look to the facts as shown by the evidence in resolving the question of whether or not the trial judge abused his discretion in denying appellant's requested relief from the final judgment.
Notice to one who is in fact a partner at the time of such notice would, of course, notify the partnership of the suit. Here, however, there is uncontradicted evidence that FCC, the "partner" who was served and thereby received the notice, was no longer a partner at the time of such service. The service was made upon its resident agent who had no connection with the remaining partner, RMS. Although there may be an inference that RMS had actual notice of the garnishment proceeding, such is only an inference, and there is no evidence that RMS knew of the suit until after the final judgment had been entered. If appellant is held to the default judgment in this garnishment action without being afforded an opportunity to prove its defense, it thus may be forced to satisfy appellee's judgment against Gulf-To-Bay Lawn Sprinklers from its own funds rather than from garnishment of money owing to appellant by Gulf-To-Bay. Certainly if it had no knowledge of the garnishment action until after final judgment, it could not be guilty of gross negligence in failing to respond to the writ. The closest the proof came to knowledge on the part of RMS was the above-quoted testimony that its vice-president, Mr. Salsman, told appellee's credit manager that something had come across his desk with the name "Gulf-To-Bay, garnishment" on it and that he didn't know what it was. While this could have been the writ of garnishment, it could also have been the final judgment in garnishment. It would only be material to the question presented here if it were the former.
*543 The purpose of default is to speed a cause and prevent a defendant from impeding the plaintiff in the prosecution of his claim. Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9 (1942). Defaults are not intended to furnish an advantage to a plaintiff so that a defense may be defeated or judgment reached without the difficulty that arises from a contest by a defendant. Hamilton v. Bogorad, Klein, etc., Inc., 275 So.2d 41 (Fla. 3 DCA 1973). Defaults and default judgments may be vacated within the judicial discretion of the trial court upon a showing of excusable neglect and the existence of a meritorious defense. Compare Florida Investment Enterprises, Inc. v. Kentucky Company, 160 So.2d 733 (Fla. 1 DCA 1964); North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962). This discretion should be liberally exercised and all reasonable doubt resolved in favor of granting applications for relief so as to permit a determination of the controversy upon the merits rather than upon procedural technicalities. Gordon v. Vaughan, 193 So.2d 474 (Fla. 3 DCA 1967); Imperial Industries, Inc. v. Moore Pipe & Sprinkler Co., 261 So.2d 540 (Fla. 3 DCA 1972). The rule with respect to remedying defaults in actions generally is applicable to garnishment proceedings. F.W. Dodge Co. v. Southern Industrial Savings Bank, 207 So.2d 516 (Fla. 3 DCA 1968). Upon the evidence presented in this case it was an abuse of discretion for the trial judge not to vacate the default and the final judgment entered upon the default.
Reversed and remanded.
RAWLS, J., concurs.
SMITH, J., concurs and dissents.
SMITH, Judge, concurring and dissenting:
I join in the majority's decision that service of the writ of garnishment on FCC was effective service on the limited partnership. Persons who hold themselves out as partners are estopped to deny the partnership relationship to the detriment of those relying on it. F.J. Dubos and Company v. Jones, 34 Fla. 539, 16 So. 392 (1894); Webster v. Clark, 34 Fla. 637, 16 So. 601 (1894). Since the primary purpose of serving process is to give the named defendant notice of the proceeding, State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 127 A.L.R. 1263 (1940), it is anomalous to hold that service was sufficient but that the default judgment should be vacated because appellant received no actual notice of the proceeding. See Barnett Bank of Clearwater, N.A. v. Folsom, 306 So.2d 186 (Fla. 2d DCA 1975). In Folsom process was served on Chester Johnson's wife at their home. She never brought the summons to his attention. The court held the proper test of the validity of service was not whether the summons was in fact brought to defendant's attention, but rather whether complainant could properly presume that process would be brought to his attention. The court held that process was properly served and that the judgment was not subject to vacation simply because the defendant had no actual knowledge of the suit.
Compare Sterling Drug, Inc. v. Wright, 342 So.2d 503 (Fla. 1977), in which Wright served a summons and complaint on Sterling, a foreign corporation, by serving Sterling's resident agent. Through a clerical error Sterling was not notified of the suit until after default was entered. After the trial judge vacated the default, the District Court of Appeal, Second District, reversed, relying on Folsom.[1] On petition for writ of certiorari, the Supreme Court reversed, holding that while lack of knowledge of the suit would not justify vacation of the default, the trial court acted within its discretion because the agent's failure to notify Sterling was inadvertent and constituted excusable neglect.
There is an evident distinction between this case and Sterling Drug and an inescapable similarity between this case and Folsom. In Sterling Drug the default resulted from inadvertent error which could have constituted excusable neglect whether committed by the agent or by the corporation. *544 In Folsom no excusable neglect was shown on the part of Johnson and his wife. Here there was evidence that appellant's general partner, upon whom process was properly served, decided to ignore the summons on counsel's erroneous advice that service was insufficient. That is not excusable neglect. In my view, a defendant who seeks to have a default judgment set aside for excusable neglect must account not only for his own neglect but also for that of his agent who had knowledge of the action and some duty, by law or by contract, to inform the defendant. Cf. Allen v. Wright, 350 So.2d 111 (Fla. 1st DCA 1977). The trial judge did not err in denying appellant's motion to set aside the judgment. I would affirm.
NOTES
[1] Wright v. Sterling Drug, Inc., 321 So.2d 460 (Fla. 2d DCA 1975).