ALBERT PACK CORPORATION, ALBERT PACK, Individually, and D. A. SMILEY, Petitioners, v. FICKLING PROPERTIES, INC., Respondent.

200 So. 907

Division B

Opinion Filed March 11, 1941

*Albert B. Bernstein,* for Petitioners;

*Ira C. Haycock,* for Respondent.

THOMAS, J.—A bill of complaint was filed praying for an accounting, under the direction of the court, of the amounts due under an agreement, which it was alleged constituted a joint adventure of Fickling Properties, Inc., a Florida corporation, the plaintiff, and Albert Pack Corporation, a Delaware corporation, and Albert Pack, two of the defendants. Inasmuch as it seems necessary in the determination of this litigation to refer only to the parties we have named, we will do so, designating them by their positions in the chancery court.

The plaintiff was engaged in the real estate brokerage business and because of an advertisement it placed in one of the newspapers giving information that certain property would be sold and inviting bidders to be present, came in touch with the defendants who were interested in the purchase of the property. Eventually they bought it.

Incidentally, the president of the plaintiff corporation, who was the sole witness in its behalf in the inquest where the facts we will discuss were developed, was financially interested in the property purchased by the defendants and decidedly benefited by that transaction.

According to his narrative negotiations were entered into between himself as president of the plaintiff corporation, and Albert Pack who held the same office in the defendant corporation, with a view to the resale of this property. He testified, supporting the theory that a joint adventure was

in fact created by these representatives of the respective corporations, that the defendant was to "put the finances up" and the property was to be resold at the highest available price, the profits to be shared equally. The money furnished by defendants for the original purchase was placed in a special account and disbursed therefrom to pay the plaintiff the purchase price, to cover expenses of the transfer, including attorney's fees and recordation of instruments in the original transaction and to defray the cost of constructing a seawall around the property. Subsequently some of the property was sold by plaintiff and other brokers and on at least one occasion the check for the purchase price was sent to the defendant Pack who remitted only part of it to the plaintiff for deposit in the special fund.

No period of duration of the association of the parties was determined by them and there were no specifications of what the plaintiff should do to accomplish the sale of the property. No obligation was assumed by it to incur any expense of resale, or in maintaining the property or to contribute anything save the negligible cost of supervising the joint account and such part of overhead cost as could be chargeable to any sales made through its office.

As will be seen, we are not dealing with the right of the plaintiff to recover for commissions earned or services rendered, but only with the absence or presence of a contract establishing a joint adventure.

Stripped of the ramifications of the subject, these are the facts, given quite briefly, on which the plaintiff relied to establish a joint adventure. Obviously, the chancellor appointed a master to take testimony first on the question whether such a relationship actually existed, because if it did not there was no need to delve into the matter of accounting. After the master reported, the chancellor entered

an order that the co-adventure had been established and the plaintiff was entitled to the accounting it sought.

It is difficult to discover in the agreement, from the sketchy account in the testimony of the only witness who attempted to establish it, the necessary elements of the relationship upon which the plaintiff places his reliance for relief.

Because it is of comparatively recent origin and is now in course of development, a precise definition of "joint adventure" is difficult, but this Court has recognized "partnership" as its nearest kin, the principal difference being that the former is usually limited to a single enterprise. Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 So. 209. Although there is authority to the contrary it is established in this State that one of the indispensable factors in proving a co-adventure is the responsibility of the parties to it for the losses as well as their right to share in the profits. "The joint adventurers are entitled to share in the profits, and must also share the losses, if any, which result" (Willis v. Fowler, 102 Fla. 35, 136 So. 358), "which must be implied if not expressed." Tidewater Const. Co. v. Monroe County, *supra*.

In the contract described by the witness there was no express agreement with reference to any hazard that the plaintiff took or any loss that it might suffer in the event that the property should be eventually sold for less than the amount paid for it. No provision was adopted from which this risk could be implied and no investment was made by it from which loss could be suffered except the inconsequential items of clerical services and overhead expenses we have mentioned. So, at the outset it is evident that one of the essential elements' of such a relationship was absent, namely, participation in loss.

Next, so far as we can learn, there was no actual invest-

.ment by the plaintiff in the enterprise at the time the agreement was made, nor was there any contribution by it in material, money or services, and we think it may be fairly said that there was no promise on the part of the plaintiff to make a contribution in the future even to effect a sale, although it was at the time a real estate broker. A proper construction of the agreement is that the profits were to be shared upon resale whether sold through the efforts of the plaintiff or some other broker. In discussing the necessity for contribution the Supreme Court of Alabama observed in Brewer v. Ewart, 210 Ala. 292, 97 So. 910 that "A contract of joint adventure, like any other contract, must be supported by a valuable consideration." In the present case the defendants were the owners of the land which cost several thousand dollars. The outlay by the plaintiff, present and promised, was, so far as we can ascertain, insignificant. According to the plaintiff's version, profits to him from resales should be forthcoming regardless of any efforts he made to that end, and in this suit it is attempting to procure an accounting and recovery of profits from sales made by other brokers. There was no undertaking, effort or expenditure on behalf of the plaintiff which could be termed such a contribution to the common purpose as would supply this indispensable ingredient to the relationship of joint adventure. 30 Am. Jur., Joint Adventures, page 681.

There is a dearth of testimony that any control or proprietorship was exercisable by the plaintiff over the subject matter. In 30 Am. Jur., Joint Adventures, page 682, it is said that mutual control and a joint interest are essential to co-adventure. This Court adopted that ruling in Willis v. Fowler, supra. This element is also lacking.

We are convinced that the elements necessary to a valid contract of joint adventure were not established before the

master; therefore, the writ of certiorari is awarded and the order of the chancellor that the cause proceed to further hearing on the accounting is quashed without prejudice to any right the plaintiff may have in a court of law. See ·Boyd v. Hunter, 104 Fla. 561, 140 So. 666.

BROWN, C. J., TERRELL and CHAPMAN, J. J., concur.