GARDNER W. BECKETT v. CLYDE E. PIERCE, et al.

25 So. (2nd) 486                                January Term, 1946
March 15, 1946                                           Division B
Rehearing denied April 18, 1946.

*Fred B. Noble,* for appellant.

*Giles J. Patterson* for Clyde C. Pierce and Clyde C. Pierce, Inc., and *Ragland, Kurz & Layton,* for W. R. Lovett, appellees.

THOMAS, J.:

The appellant, self-styled "business organizer," brought suit against Clyde C. Pierce and William R. Lovett, whom he described respectively as "dealer in stocks" and "wealthy banker and financial manipulator," and Clyde C. Pierce Corporation, seeking to have a construction trust impressed on certain stock of Piggly-Wiggly Corporation; to have himself declared the owner of one-third intereest in the stock; to obtain discovery, accounting, receivership, and so on.

When all the testimony had been introduced, the master's ultimate recommendation that the bill be dismissed was

adopted by the chancellor, and thereupon the plaintiff appealed.

In short, it was the theory of plaintiff that he had participated in a joint adventure with the individual appellees, or, to state it in the language of appellant's brief, "that an extended course of dealings [among them] resulted in a joint adventure . . . for the purchase of stock in the Piggly-Wiggly Corporation; that, as a result of the joint adventure there was a fiduciary relation between the parties, and that Pierce and Lovett violated their fiduciary obligations, and should be held constructive trustees for the stock and dividends acquired by them." He claimed, as a consequence, that he was entitled to a one-third interest in 125,000 shares of stock in Piggly-Wiggly Corporation eventually purchased by appellees from Kroger Grocery and Baking Company.

The appellees to whom we shall refer in our comment will not include Clyde C. Pierce Corporation.

The lone proposition presented by appellant is whether "the evidence adduced establish[ed] the allegations of the bill of complaint," while one of appellees insists that the only question is whether there is evidence in the record to warrant reversal, the other, whether error clearly appears. In any event a decision of this controversy must depend upon an examination of the testimony to determine just what occurred among the parties to this suit and between them and the then owner of the stock. From this we shall find whether a joint enterprise was ever actually entered into or consummated, and meanwhile we shall ascribe to the findings of the chancellor the weight they deserve and shall give full credit to his interpretation of the evidence.

But first let us summarize the allegations of the bill. The appellant determined to obtain a majority of the stock in Piggly-Wiggly Corporation if he could do so to his advantage, and thereupon entered into an extensive investigation of the affairs of that organization, as undertaking which required his entire time for nearly a year and his laying out considerable money for traveling expenses. He found that the corporation was highly successful and that Kroger Grocery and

Baking Company owned 327,561 shares of the capital stock which it wished to sell for less than the true value in order to "effectuate long term capital losses for Federal income tax savings purposes." He concluded that because of the amount of money which would be involved in the purchase of the stock it would be necessary for him to get the assistance of others in negotiating and financing the purchase. To that end he sought the aid of the appellee Clyde C. Pierce, and they agreed that in consideration of appellant's services in negotiating the purchase and in eventually managing the corporation the former would help finance the project; that their joint efforts and skill would be employed in acquiring the stock for their common benefit. In view of this understanding appellant disclosed to the appellee Pierce the information which he had obtained in his research. Soon afterwards the appellant and the appellee Pierce took the appellee Lovett into their confidence, and he, Lovett, agreed to join with them in an attempt to secure the stock. It was agreed among the three that the appellant would contribute his knowledge and services, while Pierce and Lovett would finance the enterprise. As a consequence of this arrangement all worked together in negotiating for purchase of the Piggly-Wiggly stock. Approximately three months after appellant first approached the appellee Pierce the three men agreed upon the offer which would be made to the owner of the stock, and appellant was sent by his two associates to Cincinnati, Ohio, to confer with "Kroger" and present the offer. Appellant was unable to effect the purchase because certain terms of the offer were not acceptable to the owner, and this information he immediately relayed to the appellees. Thereafter, at a time which is not specifically given, the appellees Pierce and Lovett "conspired and confederated to defraud" appellant by secretly purchasing 125,000 shares of the stock and obtaining from the owner an option to purchase the remainder. The appellant, upon discovering this duplicity on the part of the appellees, demanded that they recognize his interests, which they refused to do.

For details of appellant's plan and appellees' eventual purchase we must delve into the record of the testimony.

Unquestionably appellant gave of his time and money to inform himself on the status of the Piggly-Wiggly Corporation and the possibility or practicability of procuring its stock, a circumstance which, as we shall see, was recognized by at least one of his associates. He reached the conclusion that this stock could be obtained at an advantageous price—how it could be secured is quite another matter.

Appellant had no money, a fact which both appellees knew, else he "would not," so he testified, "have been talking to either one of them." It was because of lack of capital that he solicited the aid of Mr. Pierce and that they in turn consulted Mr. Lovett. On both occasions Mr. Beckett fully disclosed the information he had gathered.

It was appellant's plan from the beginning to have the stock placed in escrow and let "the business . . . pay for itself," which he thought could be accomplished in "less than five years." This is apparent from a letter addressed to Mr. Pierce by Mr. Beckett himself, from which the quotations are taken. Not long afterward Mr. Pierce wrote Mr. Beckett of his desire for an agreement from Kroger Grocery and Baking Company, owner of the stock, that this corporation would be "willing to receive a specified annual payment . . ." Both communications were introduced in evidence by the appellant.

Finally appellant directed to the owner a letter stating that he could "arrange for [it] to receive over a period of five (5) years" upwards of one million dollars for 327,561 shares of Piggly Wiggly stock. It was proposed that all assets be placed in escrow and liquidated during the five-year period "in such manner as to realize" a total of about $600,000; $24,000 should be paid upon execution of the agreement of sale and a like amount each year for four years ($120,000); franchise fees payable by Kroger Grocery and Baking Company in the amount of $300,000 would be waived. We do not detail the contents of the "offer" or state the exact amounts mentioned, it being our purpose only to give the nature of the scheme of appellant to obtain the stock with the aid of the appellees.

There is abundant evidence that the president of the Kroger Company promptly declined the offer to buy the stock on the socalled "five-year plan," that he proposed to sell the stock, or part of it, only for cash "on the barrel head," and that all of the parties litigant were familiar with his attitude.

Finally Mr. Pierce bought 50,000 shares and Mr. Lovett 75,000 and Mr. Beckett was apprised of their purchases.

In fine, the appellant was determined, according to the averments of the bill of complaint, to secure control of and manage the Piggly-Wiggly Corporation. How this was to be accomplished is rather obscure because in his statement on the witness stand he said that he "did not expect to get and own any stock in fee simple until the dividends of the corporation, and their earnings, had paid for it," while in the offer eventually formulated and submitted to the owner, as we have just written, the assets were to be placed in escrow and liquidated over a given period. In effect he was maneuvering to buy a corporation of wide reputation and considerable property and pay for it with its own assets.

One witness's description of the plan made it appear rather fantastic: The Piggly-Wiggly Corporation had much cash on hand; the stock of Kroger Grocery and Baking Company was to be bought by making a down payment of only five or ten thousand dollars; the stock was to be hypothecated with the seller; dividends would then be declared in sufficient amount to discharge the note. Small wonder that this scheme met with immediate rejection on the part of the owner of the stock.

It may be that the worth of the stock and its availability were drawn to the attention of the appellees and that they were enabled, as a result of the industry of the appellant and the intelligence he communicated, to purchase it at a price which would yield them considerable profit. This is doubtful, however, in the case of Mr. Lovett who was then a director of Piggly-Wiggly Corporation and seems to have been otherwise familiar with its affairs. There is evidence in the record that he knew the stock was for sale, but was skeptical at all times about its being purchased in any such manner as the appellant proposed.

It might be understood from the facts that the transaction we have narrated was incepted with the efforts of the appellant and concluded with a purchase of the stock by appellees that they had taken advantage of him and that some sort of "squeeze play" could be imputed to them. Out of justice to these men we draw attention to circumstances which refute any such idea. There is no proof that the plan he advanced was unsuccessful through any fault on their part, active or passive. As we have said, they advised him when they bought the stock, and offered him his share at a price yielding them no profit. This appellant admits. At least one of them told him that he was entitled to a "finder's fee" which he would aid the appellant in recovering from the seller of the stock. Appellant must have thought, too, he should be compensated by Kroger Grocery and Baking Company, for while the instant suit was pending he filed his declaration in the circuit court of Davidson County, Tennessee, claiming a commission from that corporation for services rendered it in the sale of the stock to the men who in this case he says were his co-adventurers in obtaining that very stock.

After a perusal of the bill and study of the testimony we have concluded that a joint adventure was not described in the pleading or established by the proof. Certainly there can be no such relationship "without an agreement express or implied to enter upon an undertaking in the objects and purposes of which the parties have a community of interest, and in pursuance of which they have equal authority." Coral Gables Securities Corporation et al. v. Miami Corporation, 123 Fla. 172, 166 So. 555. We think the allegations of the bill fail to set out these elements. The appellant stated that in order to purchase control of Piggly-Wiggly and manage it to his profit he sought assistance of others to negotiate and finance purchase of the stock. He solicited the aid of appellees. Nearest approach we have found to averments of any agreement were the allegations that appellant and appellee Pierce agreed to "join their efforts and skill in acquiring said Piggly-Wiggly stock for their mutual profit," and that "Lovett became interested . . . and agreed to join with plaintiff and

Pierce in an effort to purchase and finance the purchase of said Piggly-Wiggly Stock . . . " We do not glean from these an agreement for joint adventure, not to mention the manner of distribution of losses were the enterprise to fail, another indispensable factor. Willis v. Fowler, 102 Fla. 35, 136 So. 358; Albert Pack Corporation v. Fickling Properties, 146 Fla. 362, 200 So. 907.

Even assuming that elements of joint adventure were present in the appellant's pleading and that there was no discrepancy between an allegation to secure control and manage the corporation and proof of an offer to liquidate the corporate assets, it is still patent that the owner of the stock promptly and unconditionally declined it. It seems to us that then and there the project ended.

The bill concluded with the charge that appellees "conspired and confederated to defraud [the appellant] of his interest in the venture" based on the preceding allegations that he had disclosed to them his information about the financial structure of Piggly-Wiggly. These charges are refuted by what we have already written, but for the sake of emphasis we shall briefly repeat them. It was after the Kroger Grocery and Baking Company had rejected the offer that they purchased individually their stock. Although Beckett had, it is true, been industrious in gathering information about Piggly-Wiggly and had advised appellees of the results of his investigations, it could not be said that the appellee Lovett was ignorant of the intelligence obtained, when he, Lovett, was thoroughly familiar with the grocery business and had been a director of Piggly-Wiggly for many years. And, finally, the assertion that appellees surreptitiously plotted against appellant by using the information he communicated to them to get the stock is wholly inharmonious with their offer to let him have his part of the stock at exactly the price they paid after his attempt to secure all the stock and pay for it from the dividends (or from liquidation of assets) had failed. Added to this is his attitude, clearly reflected in his suit instituted in Tennessee, that, after all, he obtained a purchase on behalf of Kroger Grocery and Baking

Company, owner of the stock, and that that corporation should pay him for his services.

The positions that appellant was appellees' co-adventurer in a scheme to obtain the stock and Kroger Grocery and Baking Company's representative in selling that very stock to appellees are, to our mind, utterly inconsistent.

We affirm the chancellor's decree.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.