82 So.2d 143 (1955)
Carl E. RUSSELL and Bertha K. Russell, husband and wife, and Bruce Edward Kerney, Petitioners,
v.
Paul THIELEN, sometimes known as Paul Theilen, and Augustin Thierry, Respondents.
Supreme Court of Florida. Division A.
June 29, 1955.
Rehearing Denied September 12, 1955.
*144 Shackleford, Farrior, Shannon & Stallings, R.W. Shackleford, J. Rex Farrior and Norman Stallings, Tampa, for petitioners.
Fowler, White, Gillen, Yancey & Humkey, Cody Fowler and Margaret Deaton, Tampa, for respondents.
PER CURIAM.
The subject matter of this litigation is "Whitfield Estates," a subdivision between Sarasota and Bradenton containing approximately 537 vacant lots. It was platted during the boom days of the twenties, but very few houses had been placed on it. It had grown up in weeds and bushes and was generally run down at the heels. The parties to this litigation are Carl E. and Bertha K. Russell and Bruce Edward Kerney, a son of the latter, defendants below, petitioners here, and Paul Thielen and Augustin Thierry, plaintiffs below, respondents here. The Russells were retired people with some money they were interested in placing on Florida real estate but wanted nothing to do with sale and development. Thielen and Thierry were developers with the "know how" to sell and develop land. Mrs. Frances Livingston, a real estate broker of Bradenton, introduced the Russells to Thielen and Thierry.
The Russells entered into an oral agreement with Thielen and Thierry to the effect that the Russells would purchase "Whitfield Estates" from the owners, that Thielen and Thierry would develop and sell the property and that the parties hereto would split the profits. This much of the agreement is clear, but there is a dispute as to the existence of other elements of the initial oral agreement. Thereafter the Russells did purchase "Whitfield Estates" for a consideration of approximately $115,000, title being taken in their name. Thielen and Thierry being "real estate developers" had no license to sell real estate for other owners and apparently for this reason the parties executed an "option agreement." There is a dispute as to how much, if any, of the previous oral agreement was reflected in the "option agreement," that being the only written agreement executed by all the parties. The "option agreement" was executed July 12, 1950, was not acknowledged and was not recorded until the parties came to cross purposes and could no longer go ahead with the development and sale of the lots. Under the "option agreement" Edwin J. Kennedy, an attorney in Sarasota, was appointed a trustee to deliver deeds upon his receiving the option price set forth as each sale was made by Thielen and Thierry.
Standing alone, the "option agreement" clearly did not establish, nor is it so contended, a joint venture under the decisions of this court in that the developers (Thielen and Thierry) were not obligated to do anything; although they had the "right" to improve the property at their own expense, they were not obligated to do so, nor were they obligated to purchase or exercise the "option" feature contained therein which set forth the "option price" of each lot in the development. Neither party relies wholly upon the legal effect of the "option agreement." The parties operated under this arrangement for a period of about two years and a number of lots were sold. Distribution of the proceeds, including the allocated base cost and the profits, were made by Kennedy, not by the price schedule shown in the "option agreement" but in accordance with forms specially prepared by the parties for that purpose as each sale was closed. Since all sales were made above base cost, these sheets show only the *145 distribution of profits, 50% of the profit to the Russells and 50% to Thielen and Thierry.
On January 22, 1953, Kennedy on behalf of the Russells notified Thielen and Thierry that the "option agreement" was no longer in force because they or their representative had not purchased "last year" twenty percent of the total original lots as the "option agreement" required. Thielen and Thierry were thereafter able to conclude a number of other sales on the same basis previous to the cancellation notice, but after a series of unsuccessful conferences in an attempt to work out their differences, Thielen and Thierry filed this suit, their complaint praying, inter alia, that a partnership or joint venture be declared to exist between the parties and that an accounting be had. After answer was filed, the matter came on for a preliminary hearing on the question of existence of a joint venture. Much testimony was presented and numerous exhibits were admitted in evidence. The chancellor concluded that a joint venture existed, that a dissolution had been made necessary by the actions of the Russells and an accounting was ordered. From this interlocutory order we are confronted with a petition for certiorari.
It is contended by the petitioners (1) that the relationship between the parties was that of an exclusive sales agency and that no joint venture was intended or created; (2) that a joint venture to develop and sell real estate cannot be created by parol; (3) that this suit should have been brought by Uplands, Inc., the corporation that respondents operated in the development of another subdivision and through which they channelled the expenses and their share of the profits from lots sold in Whitfield Estates; (4) that even if a joint venture existed, the petitioners are in no way obligated to respondents since they (petitioners) have exercised their option to cancel the agreement; (5) that since petitioners paid for the real estate, the respondents have no claim on it that could be the basis for an accounting even though a joint venture did exist.
With the exception of petitioners' issue No. 2, there doesn't appear to be any significant variance between the parties as to the legal requirements for the establishment of a joint venture as contrasted to that of an exclusive sales agency. This court has many, many times set forth the rules that govern the formation of a joint venture. The relationship is quite similar to that of partnership and is governed by the principles which constitute and control the law of partnership. Proctor v. Hearne, 100 Fla. 1180, 131 So. 173; Willis v. Fowler, 102 Fla. 35, 136 So. 358; Bryce v. Bull, 106 Fla. 336, 143 So. 409; Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 So. 209; Albert Pack Corp. v. Fickling Properties, 146 Fla. 362, 200 So. 907. The principal difference between a partnership and a joint venture is that the joint venture is usually limited to a single enterprise. Pack Corp. v. Fickling Properties, supra. We have held that the intention of the parties control, Bryce v. Bull, supra, Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4, and the parties must share losses as well as profits, Pack Corp. v. Fickling Properties, supra. A joint venture is founded entirely on contract which may be either express or implied in whole or in part from the acts and conduct of the parties or the construction which the parties give to the contract between them. 48 C.J.S., Joint Adventures, § 3.
It is sufficient to say that the record discloses that respondents did in fact have a legally sufficient investment in the lands in question to establish a joint venture, in that they invested a considerable sum in preparation to placing the lots on the market. The lots are shown to have lain fallow for a number of years, the result of which was that they were covered by undergrowth and required many hundreds of dollars to prepare them for sale. This the respondents stood to lose in the event their efforts were unsuccessful. In addition to this, respondents had invested more than two years of time and energy in promotion, advertising and development, as a result of which 110 lots had been sold, and the value of the remaining lots is shown to *146 have been greatly increased. We have held that a partnership existed where one party supplied the labor, experience and skill and the other party the necessary capital, if intention of the parties were otherwise sufficiently manifested. Losses under such circumstances would be shared, for in the event of a loss the party supplying the "know how" would have exercised his skill in vain and the party supplying the capital investment would have suffered diminishment. Uhrig v. Redding, supra. Although much of the evidence is susceptible of the legal conclusion that the parties merely created an exclusive sales agency, it is not without significance that much of the evidence is indicative of a joint venture and accordingly we must decline to overturn the chancellor in his ruling. The facts are that the chancellor was confronted with a very complex factual situation; he had the parties and the evidence before him; he knew the locus; every point raised turned in whole or in part on the evidence that he was in much better position to appraise than we are; even if there were some basis for disagreement, we do not feel justified to reverse him.
As to the question whether the statute of frauds, F.S.A. § 725.01, applies to the formation of a joint venture to develop and sell real estate, it is fairly well settled that the statute does not present a barrier to an otherwise valid agreement. The rule is well stated in 2 Corbin on Contracts, Sec. 418, as follows:
"A contract between two persons to go into the business of buying and selling real estate as partners or as joint adventurers, sharing profits and losses thereof, is not within section 4 unless there is a provision for transfer of specific land from one party to the other."
In support of this doctrine, cases from twenty-two jurisdictions and England are cited in the footnote. Some of the cases cited in that footnote apply the same rule as to section 17 of the statute. See also 49 Am.Jur., Statute of Frauds, Sections 25 and 217.
Question 4 turns in part on highly controverted evidence relating to the intention of the parties subsequent to the execution of the "option agreement" and we find insufficient basis in the record to overturn the chancellor's conclusion. As to the final question, No. 5, it is sufficient to point out that no actual distribution of any amount has been ordered by the chancellor. The chancellor has not ruled on how the enhancement in value of the assets is to be distributed, nor whether he will apply the doctrine of Uhrig v. Redding, supra, to such enhancement. The question is premature, in our opinion, in view of our conclusion that the chancellor was not in error in finding that a joint venture existed.
We have never been confronted with a better predicate for a lawsuit than the one presented here. The oral agreement was in dispute before it was cold, the "option agreement" was vague and controversial and was not followed in material respects; the prices placed on the lots were fictional and were not observed; in fact, in many respects, the agreement was a point of departure instead of a point of observance. In view of which we are driven to the view that the findings of the chancellor were correct.
A very wise judge and preceptor gave this advice: "If you are in doubt, take a short cut to justice." The chancellor may have been so confronted. At any rate, we have searched the record diligently and find no reason to reverse him. Account of the loose manner in which this transaction was precipitated, the parties had euchred themselves into a hostile position.
Certiorari is therefore denied.
DREW, C.J., and TERRELL, SEBRING and ROBERTS, JJ., concur.