155 So.2d 415 (1963)
C.E. PHILLIPS, Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, a foreign corporation, Appellee.
No. 3617.
District Court of Appeal of Florida. Second District.
July 12, 1963.
Rehearing Denied August 9, 1963.
*416 Mack N. Cleveland, Jr., and Carroll Burke, Sanford, for appellant.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for appellee.
GERMANY, JOHN, Associate Judge.
This is an appeal by the appellant, plaintiff in the trial court, from an order dismissing the third amended complaint without leave to amend. Appellant is seeking to recover from the appellee certain monies under a policy of insurance or employees' fidelity bond.
On May 5, 1953, the appellee, United States Fidelity and Guaranty Company, a foreign corporation, issued a certain policy of insurance or employees fidelity bond with C.E. Phillips and C.E. Phillips doing business as Produce Brokers Company, insuring against employee dishonesty with the limitation of $10,000.00. This policy of insurance in accordance with and in consideration of the agreed premium obligated the insurer to indemnify the plaintiff for all loss sustained during the policy period, in accordance with such and so many of the insuring agreements as are specifically designated by the insertion of the amount of insurance in the table of limits of liability. The policy provided:
"INSURING AGREEMENTS. Through any fraudulent or dishonest act or acts, committed anywhere by any of the employees acting alone or in collusion with others, including loss of money and securities and other property through any such act or acts of any of the employees, and including that part of any inventory shortage which the assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the employees; provided that the company's aggregate liability as to all employees shall not exceed the limit of liability applicable to this Insuring Agreement I, subject, however, to the provisions of Section 9."
Under the "General Agreements" of the policy, and under paragraph B, it was provided:
"None of the insuring agreements of this policy shall apply to loss, damage or destruction caused or contributed to by any fraudulent, dishonest, or criminal act committed by a partner of the assured, whether acting alone or in collusion with others."
Employee is defined as follows:
"`Employee' or `employees' means, respectively, one or more of the natural persons (except directors or trustees of *417 the assured, of a corporation, who are not also officers or employees thereof in some other capacity) while in the regular service of the assured in the ordinary course of the assured's business during the policy period and whom the assured compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service * * * but does not mean, brokers, factors, commission merchants, consignees, contractors or other agents or representative of the same general character."
On or about the middle of 1956 the appellant, C.E. Phillips, doing business as C.E. Phillips Transportation Broker, entered into an agreement with R.S. Bates. This agreement referred to Phillips as "employer" and to Bates as "employee." This instrument or agreement provided that the partners were to enter into a business in the field of transportation broker and that should the venture prove to be profitable the business would be incorporated under a designated name on or before July, 1957. The agreement provided also that Bates was entitled to "draw" the sum of $100.00 per week on the account and that Phillips was entitled to draw the sum of $25.00 per week when away from the city of Sanford. The contract also provided that on July 1, 1957, there should be a proper financial accounting of any and all monies received and disbursed and should there be any profit as a result of the existence of the business the profits were to be divided equally between Phillips and Bates, based on the net profits. Bates was to be the active manager of the business operation and to furnish, "if necessary," accurate copies of the daily reports of all truckloads and other material and pertinent data and a record of all checks disbursed daily. It was further provided that all monies received by Phillips or Bates or any of their agents as a result of the business operation should be promptly deposited to the account of Phillips at the Florida State Bank in Sanford. Phillips was to furnish the capital necessary for the operation of the business and to maintain enough money in cash or accounts receivable to provide Bates an amount of money for labor and services and that Phillips should have the authority to draw out monies he desired during the existence of the contract, provided he made financial accounting therefor at the expiration of the contract. The contract further provided that before any division of profits would be made, Phillips should be reimbursed for any and all capital contributions made by him and that there should be no division of profits until all expenses had been paid and proper credit allowed; that any division of profits should be on a net profit basis.
The third amended complaint charges that R.S. Bates was an employee of the plaintiff between November 12, 1956, and February 8, 1957; that the parties to the contract of employment intended to create an employer-employee relationship, there was no community of interest in the capital employed in the business of C.E. Phillips; that the employee had no responsibility to share the losses of the business of C.E. Phillips, if any; that the contract of employment made Bates the manager of the business; that the plaintiff paid withholding tax on Bates as an employee; that the said contract of employment provided for the sharing of net profits as an added inducement to the said employee in addition to this wages and salary of $100.00 per week. There is an allegation that the defendant company accepted premiums for the coverage of Bates as an employee of C.E. Phillips. The complaint further alleges that Phillips was the owner and entitled to the immediate right of possession of the checks therein described which were payable to R.S. Bates or R.S. Bates Trucking Company and which checks were received in the operation of the business of C.E. Phillips under the said contract of employment in the total amount of $8,112.78; that Bates without authority did wrongfully take, and convert to his own use the above described checks and the monies *418 therefrom, thereby depriving the plaintiff of said converted property between November 12, 1956, and February 8, 1957; that demand has been made upon the defendant company and payment refused.
The motion to dismiss the third amended complaint was sustained on the theory that the agreement between the plaintiff and Bates created a joint venture as a matter of law and therefore the alleged defalcation of Bates was not covered by the terms of the policy. This is the sole question involved in this case.
Our Supreme Court in the case of Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 So. 209, in discussing the legal requirements to create a joint adventure said:
"* * * the question of whether the parties to a particular contract have created between themselves the relationship of joint adventurers is dependent upon their intentions, which is to be determined in accordance with the ordinary rules covering the interpretation of contracts; that joint adventurers are entitled to share in the profits, and must also share the losses, if any; that a joint adventure is very similar to a partnership, the chief distinction being that a joint adventure is usually limited to a single transaction; that although there may not be any express agreement that the parties shall share in the losses, if any, this must have been implied from the agreement made, and the circumstances surrounding its execution, as having been within the contemplation and intention of the parties. Of course, where the agreement is in writing and free from ambiguity or doubt, its legal effect must be determined as a matter of law, and the intention of the parties gathered therefrom."
Also, this Court, in speaking through Judge Shannon, in the case of Pollard v. Browder, 126 So.2d 310, said:
"The requirements of a joint venture have been set forth several times. As Justice Drew stated in Kislak v. Kreedian, Fla., 95 So.2d 510, at page 515:
"`In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. * * *'"
The contract in question is free of ambiguity and doubt. It is clear that the parties did not intend that Bates should share in or be responsible for the losses, if any. The absence of this provision is fatal to the contention of the appellee. Tidewater Const. Co. v. Monroe County, supra, Beckett v. Pierce, 157 Fla. 184, 25 So.2d 486, Pollard v. Browder, supra, Klaber v. Klaber, Fla.App., 133 So.2d 98.
To support his position that the sharing of losses is included in the venture of the parties in the case before the Court, appellee relies on the case of Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4, which was a partnership venture in which the appellee was to furnish all the capital and appellant all his time, effort and skill in the management and keeping of records of the business, the profits realized to be shared equally between the two. In that opinion the Court says:
"It seems beyond question that there was intended and in existence a partnership between the parties. Appellant supplied the labor, experience and skill, appellee the necessary capital. Any profit was to be shared equally. Losses would also be shared, for in the event of loss, appellant would have exercised his skill and effort in vain, and appellee would have to suffer diminishment of his capital investment."
The facts in this case distinguish it from the law in the above quotation, for here, *419 Bates received $100.00 a week for his services and there was no contemplation in the agreement for him to share losses.
As is said in the case of Albert Pack Corporation v. Fickling Properties, 146 Fla. 362, 200 So. 907:
"Although there is authority to the contrary it is established in this state that one of the indispensable factors in proving a co-adventure is the responsibility of the parties to it for the losses as well as their right to share in the profits."
"Share of Losses" means to be responsible or liable for the losses created by the venture and liability, if any, to creditors or third parties.
The third amended complaint sets forth a cause of action sufficient to withstand a motion to dismiss. The judgment appealed from is reversed and the cause remanded for further consideration consistent herewith.
ALLEN, Acting C.J., and SHANNON, J., concur.