200 So.2d 213 (1967)
Iris Rose KOCHAN, Appellant,
v.
AMERICAN FIRE AND CASUALTY COMPANY, Appellee.
No. 7040.
District Court of Appeal of Florida. Second District.
April 26, 1967.
Rehearing Denied July 13, 1967.
*214 E. Randolph Bentley, of Bentley, Miller, Sinder, Carr, Chiles & Ellsworth, Lakeland, for appellant.
Robert R. Feagin, Jr., and Thomas R. Bayless of Holland, Bevis, Smith, Kibler & Hall, Bartow, for appellee.
PIERCE, Judge.
Defendant below, Iris Rose Kochan, appeals from a final summary judgment entered in favor of plaintiff below, American Fire and Casualty Company.
Plaintiff, hereinafter called the Company, filed an action in the Polk County *215 Circuit Court against Ralph Kochan and his wife, Iris Rose Kochan, hereinafter referred to respectively as Ralph and Iris. Iris answered, raising a number of affirmative defenses, which the trial Court struck, all except one. The Court then entered summary judgment for the Company. Iris appealed and challenges the correctness of the trial Court's action, both in striking the affirmative defenses and in entering the summary judgment. Ralph did not appeal.
The Company sued Ralph and Iris at law, alleging their joint venture in the construction business and Iris' execution of an indemnity agreement indemnifying the Company against any loss it might suffer as result of execution of performance bonds issued in connection with construction work undertaken by Ralph Kochan Construction Company.[1] The Company alleged that the indemnity agreement of Iris induced it to issue the bond under which it paid out more than $25,000 when Ralph's construction company defaulted on a certain contract for construction of an American Legion Post.
Ralph answered, admitting the construction contract, but denying the remaining allegations. Iris answered, admitting the construction contract and the Company's completion of construction. She also raised ten affirmative defenses, which will be dealt with in the order of their presentation here.
1. The first defense, and the only one not stricken upon the Company's motion to strike, alleges there was no consideration for the indemnity agreement.
Consequent upon the striking of defenses 2 through 10, the Company moved for summary judgment and supported its motion with affidavits establishing inter alia: the execution and delivery of the "partnership or joint ventureship agreement" between Ralph and Iris, and the indemnity agreement by Iris; the issuance pursuant thereto of a "performance and payment" bond to American Legion Frierson-Nichols Post No. 8, with Ralph Kochan Construction Company as principal; default under the contract secured by such bond; and loss suffered by the Company under the bond in the amount of $25,934.96. In opposition to the Company's motion, Iris filed her affidavit alleging no consideration for her indemnity agreement and also that the Company did not rely upon it. The trial Court then granted summary judgment to the Company, finding that there was no genuine issue as to any material fact and that the Company was entitled to judgment as a matter of law. An examination of the indemnity agreement, and the facts which were before the trial Court, reveals the correctness of the trial Court's ruling.
It is clear from an examination of the express provisions of the indemnity agreement that this agreement was an, if not the, essential prerequisite and consideration to the issuance of indemnity bonds by the Company. The record shows that pursuant to this agreement and in reliance upon it, the Company did in fact issue the bond in question under which it suffered the loss that it now seeks to recover from Iris. That Iris had a "substantial, material and beneficial interest" in obtaining such bonds for Ralph Kochan Construction Company is expressly stated in the preamble to the agreement. Having signed and sealed the indemnity agreement, Iris may not now deny its express terms.
As to Iris' plea of "no consideration" flowing to her, the law of consideration with respect to contracts of indemnity is well settled.
"Incurring liability as a surety is a sufficient consideration for a contract to indemnify him from the consequences of such act". 42 C.J.S. Indemnity § 6. *216 "It is not necessary that the consideration move from the indemnitee to the indemnitor." Id.
"Where the indemnity contract assumes and recognizes the existence of the principal obligation which it indemnifies, it is not without consideration because of the fact that it is made prior to the execution of the principal obligation." Id.
The above general rules have been recognized by the Florida courts. It was stated in Lake Sarasota, Inc. v. Pan American Surety Co., Fla.App. 1962, 140 So.2d 139 that
"* * * [t]he consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. It is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something of value flows from the person to whom it is made, or that he suffers some prejudice or inconvenience and that the promise is the inducement to the transaction * * *".
There is little substance in Iris' contention that the Company "did not rely" on the indemnity agreement. It is unrealistic to suppose that bonding companies issue performance and surety bonds in the absence of an indemnifying agreement for losses they may sustain as a result of the issuance of such bonds. Consideration having been established, Iris' naked denials are insufficient to raise a genuine issue as to any material fact.
Finding, as we do, that the trial Court was correct in its determination that the Company was entitled to summary judgment, it is not necessary to proceed further, but lest Iris feels that portions of her appeal have been ignored, we will now examine the nine remaining defenses raised in her answer.
2. She contends that the indemnity agreement could not make her separate property liable for the debts of her husband since it was not executed as required by Article XI, Section 1, of the Florida Constitution, F.S.A. Article XI, Section 1, Florida Constitution, provides that the separate property of a wife "shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyance by married women." (Emphasis added).
She is correct in her assertion that the indemnity agreement was not sufficiently in conformity with the above constitutional provision to bind her for the "debt of her husband." However, to let the matter rest there would be to ignore the distinction between indemnity and guaranty. The distinguishing characteristics between these two types of agreements is clear.
"The promise in an indemnity contract is an original and not a collateral undertaking, and in this particular, * * * a contract of indemnity differs from a contract of guaranty. The liability assumed in an indemnity contract is not secondary, but primary; * * * it is not a contract to answer for the contractual debt, default or miscarriage of another than the promisee, but a contract to indemnify the promisee from loss owing to his contractual liability." 42 C.J.S. Indemnity § 2, page 565.
Recognition has been given to the above dissimilarity by the Florida courts in holding that an indemnity agreement running to a third party insurer is not subject to the constitutional provision protecting a wife's separate property from liability for her husband's debts. American Casualty Co. of Reading, Pa. v. Block, Fla. App. 1965, 176 So.2d 579. The facts in Block are essentially the same as those in the instant case, the only difference being that in Block the husband was a member of a partnership rather than a sole proprietor as here. Iris' assertion that the *217 decision in Block was predicated upon the partnership being a "separate entity" does not hold up in the light of pertinent portions of Block, as follows:
"Esther Block's obligation was not one to indemnify the American Casualty Company for loss that it might sustain on such bonds because of a failure of her husband to pay an obligation owed to the plaintiff or even for failure of the partnership to pay a debt owed to the American Casualty Company. Her agreement was to indemnify the American Casualty Company against loss sustained as a result of the partnership defaulting in its obligations to other parties. Therefore, her undertaking was not a promise to pay the debt of her husband. See United States v. American National Bank of Jacksonville, 5 Cir.1958, 255 F.2d 504, 508. The appellant has directed our attention to the essential distinction between an indemnity contract and a contract of guaranty which is that `the promisor in an indemnity contract undertakes to protect the promisee against loss or damage through a liability on the part of latter to a third person, while the undertaking of a guarantor or a surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligation to the promisee'. Royal Indemnity Co. v. Knott, 101 Fla. 1495, 136 So. 474, opinion on rehearing at 479 * * *." (Emphasis added).
Florida Statutes § 708.08, F.S.A., sometimes referred to as the Married Woman's Emancipation Statute, has given the married woman power to enter into business transactions with regard to her separate property practically as though she were single, the only material restriction being that her husband must join in "deed, mortgage or other instruments conveying or encumbering" her separate real property. These statutes have been upheld as not being in conflict with the Constitutional provision for protection of married women's separate property, and the Florida Supreme Court has stated that
"[u]nder modern statutes a married woman may now own separate property, enter into contracts, sue and be sued, engage in business, and otherwise conduct her affairs almost with the same absence of restraint as if she were a feme sole." Judd v. Schooley, Fla. 1963, 158 So.2d 514, citing § 708.08, Fla. Stat., F.S.A.
Here Iris exercised her "emancipation prerogative" and voluntarily entered into a contract to indemnify the bonding company. She cannot now be heard to protest that enforcement of that contract violates her Constitutional rights. Care must always be taken that the worthy goal of protection of the married woman, envisioned by these Constitutional provisions, is not subverted so that the "shield becomes a sword" in the hands of those it was designed to protect.
3. Iris contends that the Company was estopped to rely on the joint venture "memorandum" of the parties because Ralph Kochan Construction Company was a sole proprietorship, that Iris was not Ralph's partner therein, and that the Company knew this both at the time the agreement was signed and at the time the performance bond was issued.
In Phillips v. United States Fidelity and Guaranty Company, Fla.App. 1963, 155 So.2d 415, text 418, is found the following:
"Also, this Court, in speaking through Judge Shannon, in the case of Pollard v. Browder, 126 So.2d 310, said:
`The requirements of a joint venture have been set forth several times. As Justice Drew stated in Kislak v. Kreedian, Fla., 95 So.2d 510, at page 515:
`"In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control *218 or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. * * *"'" (Emphasis added).
A cursory glance at the foregoing enumerated requirements reveals the shortcomings of the "memorandum" to actually establish a joint venture, for no mention is made therein of joint control or right to share in the profits, but it deals only with sharing of losses. So that were her liability founded on the joint venture, she would perhaps be "saved harmless". However, her liability stems from the indemnity agreement, by which she became an independent indemnitor for losses sustained by the Company. Apparently, the Company procured the joint venture agreement or "memorandum" only out of a superabundance of caution, rather than from any necessary ultimate reliance thereon.
4. This defense is similar to the third defense, but goes further and alleges the Company's estoppel to rely on either the joint venture agreement or the indemnity agreement, because of the Company's knowledge that Iris was not a contractor as stated in the indemnity agreement, nor a partner as stated in the joint venture agreement. Documents were attached in an attempt to establish the Company's awareness that Ralph Kochan Construction Company was operated as a sole proprietorship of Ralph. But here again, such facts cannot avail Iris. Knowledge of the Company as to the sole proprietorship might well be established, but it is immaterial to the issue of Iris' liability under the indemnity agreement, as hereinbefore pointed out.
5. This alleges that a confidential relationship existed between Ralph and Iris; that Iris did not read the indemnity agreement or the joint venture agreement, nor did Ralph explain them to her; that they were for the benefit of Ralph and the Company and to her detriment; that she signed them because of her faith in her husband; and that she would not have executed them if she had known that they subjected her separate property to the debts of her husband.
Having already shown that Iris' liability did not rest upon her as guarantor of the debts of her husband but rather upon her agreement to indemnify the Company, we will now explore the alleged violation of the "confidential relationship."
While taking cognizance of the existence of confidential relationships between husbands and wives, we cannot extend this recognition to her argument that submission of the documents through her husband made him the agent of the Company, so as to impute his alleged fraud to the Company. In All Florida Surety Company v. Coker, Fla. 1956, 88 So.2d 508, wherein a subcontractor attempted to avoid liability as an indemnitor on the ground that submission of the agreement through the general contractor made the general contractor an agent of the surety, the Court rejected such contention, stating as follows:
"There is no evidence that Barber [general contractor], assuming that he did the things with which he is charged, was acting for the surety company." (Emphasis added).
The Court in Coker went further and expounded on the duty of a party to read a written contract which he signs:
"`A party to a written contract cannot defend against its enforcement on the ground that he signed it without reading it, unless he aver facts showing circumstances which prevented his reading the paper, or was induced by the statements of the other parties to desist from reading it.'"
And the Court continues, quoting with approval from 12 Am.Jur., 628, Contracts, Sec. 137:
"* * * [t]o permit a party, when sued on a written contract, to admit that he *219 signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible. * * *"
6. This defense sets up that the Company sought to have Iris execute a second and identical indemnity agreement; that she refused to sign such second agreement after becoming apprised of her possible liability thereunder; and that her said refusal to sign the document served to relieve her from any liability even under the first agreement. She asserts that by submission of the second agreement, the Company waived its rights under the existing first agreement and that her unawareness of liability thereon excused her failure to affirmatively rescind the same or notify the Company that she would not be liable for any obligation of her husband.
This arguument just doesn't hold up. Nothing in the record here shows intentional relinquishment by the Company of a right. Upon default by Ralph, had the Company failed forthwith to seek enforcement of its claim against her a case for waiver might be made out, otherwise not.
7. This defense sets up the same facts as No. 6, but goes on to allege that Iris's refusal to execute the second indemnity agreement constituted some sort of implied "notice" of complete rescission on her part, and therefore the Company was not entitled to rely on the first agreement.
To be effective, "notice" must be communicated. Iris does not deny her failure to give actual notice. Her failure to execute the second agreement is more consonant with the assumption that she considered herself already bound to the Company than it is with the assumption that her failure to act constituted "notice" that she was no longer bound. Moreover, the fact that she failed to execute the second agreement was immaterial and extraneous to her already existing obligation under the first agreement. There was simply no connection between the two factual circumstances.
8. This defense is repetitive of No. 7 and is dispositive thereunder.
9. This is very similar to the third and fourth defenses and attempts to establish estoppel of the company to enforce the indemnity agreement on the theory that the agreement is predicated on a partnership or joint venture between Iris and Ralph although the Company knew that Ralph Kochan Construction Company was a sole proprietorship.
The so-called joint venture agreement is not referred to in this defense, but otherwise it is identical with No. 3 and No. 4 and follows like disposition. Whether or not the Company knew that Ralph Kochan Construction Company was a sole proprietorship is immaterial as Iris's liability is predicated on her execution of the indemnity agreement.
10. Defendant here contends that the indemnity agreement is so vague, ambiguous and uncertain that the agreement is void and unenforceable. Several incidental provisions and clauses are challenged.
But it is well settled law that minor provisions of contracts should be interpreted so as not to conflict with the main purpose. Indeed, minor provisions should be sacrificed if irreconcilable with the general intent. 17A C.J.S. Contracts § 309, page 163, et seq. 4 Williston on Contracts, (3rd Ed. 1957) § 619. There are no ambiguities here as to the main purpose, which was to indemnify the Company for any losses sustained on the performance bonds through the default of Ralph, d/b/a Ralph Kochan Construction Company. Any other purpose was of secondary importance and must be subordinated to the primary purpose and intent.
*220 Iris in her reply brief cites Holl v. Talcott, Fla. 1966, 191 So.2d 40, as standing for the proposition that a heavy burden is upon one seeking summary judgment. However, the Holl case concerned medical malpractice and was an action ex delicti and not ex contractu as here. Where determination of a law suit depends upon written instruments of the parties thereto and the legal effect to be drawn therefrom, the question at issue is essentially one of law only, and ordinarily would be determinable by entry of summary judgment by the Court. The instant case falls clearly within the category so delineated.
Judgment affirmed.
LILES, Acting C.J., and McNULTY, JOSEPH P., Associate Judge, concur.
NOTES
[1] This was merely an unincorporated trade name used by Ralph in his dealings, and in execution of legal documents pertaining thereto.