HARRIS, Judge.
The trial court entered summary judgment in favor of Ohio Casualty Insurance Company finding that it had no duty to defend or indemnify Florida Municipal Power Agency under the facts of this case. We reverse.
Florida Municipal Power Agency (FMPA) was created pursuant to statute for the purpose of joint acquisition, construction, and ownership of electricity generating facilities by municipalities and other public utilities. To that end, FMPA acquired a 50% ownership interest in Kissimmee Utility Authority’s (KUA) Cane Island Project. As a co-owner of the property, FMPA entered into a *661 Participation Agreement with KUA under which the two would share the cost of the production of electricity but each would be entitled to its share of the electricity produced to do with as it chose. Each party would be solely responsible for any losses and entitled to any profits related to its disposition of its share of the electricity. In other words, it was the intention of FMPA and KUA that as co-owners of the system, they would share in the cost of production of the electricity on a pro rata basis (based on their ownership interest) but would not share in the profits and losses related to the disposition of the electricity. In meeting this obligation to share costs, each party would alone be responsible for its one-half cost and not liable for the other’s obligation. The Participation Agreement expressly negated the relationship of partnership or joint venture.
Among the assets purchased by FMPA was an interest in a license agreement with CSX, the owner of railroad tracks adjacent to the generating facility, by which a crossing over the tracks was permitted in order to provide access to the generating facility. The license agreement indemnified CSX against property damage and personal injuries resulting from the presence and use of the crossing.
A truck delivering an eighty ton combustion turbine became immobilized on the crossing and was dislodged by a fast moving Amtrak passenger train, causing property damage and personal injuries. FMPA and KUA were joined as parties in litigation because of alleged faulty design of the crossing constructed by them but the jury found them not hable and assessed damages only against the company delivering the turbine, as well as CSX and Amtrak. This suit arose out of CSX’s claim against FMPA on its indemnity agreement. FMPA called on its insurer, Ohio Casualty, for defense and indemnification under its general liability policy and under its umbrella policy.
Ohio Casualty’s primary defense against coverage was that even though FMPA was an insured, the policy did not cover the insured’s conduct when the insured was involved in a partnership or joint venture. Thus our first inquiry is whether the Participation Agreement between FMPA and KUA constituted a joint venture. We hold that it did not. The supreme court in Tidewater Construction Co. v. Monroe County, 107 Fla. 648, 146 So. 209 (1988), held that the question of whether the parties to a contract have created a joint venture is dependent upon their intentions, which are to be determined in accordance with the ordinary rules covering the interpretation of contracts. Here, the parties expressly provided that no joint venture was intended. Further, the contract was carefully drafted in such a way that it is apparent that the parties did not want a joint venture implied from its terms. In order for a joint venture to be established (in addition to other requirements) there must be an intention to share losses as well as profits. Green v. Putnam, 93 So.2d 378 (Fla.1957). Here, Ohio Casualty seeks to equate the intention to share the cost of production with an intention to share profits and losses. We reject this equation. If this were the case, then all participation agreements would be vulnerable.
The next issue is whether the particular accident is covered by the general liability policy. Ohio Casualty agrees that the terms of the umbrella policy cover the accident. The general liability policy covers indemnities given by FMPA only under an “insured contract.” An “insured contract” is defined, insofar as relevant here:
e. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad ...
f. That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for “bodily injury” or “property damage” to a third person or organization.
An “insured contract” does not include that part of any contract or agreement:
a. That indemnifies any person or organization for “bodily injury” or “property damage” arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any rail *662 road bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.
In our view, this language would defeat recovery only if the accident arose out of the construction or demolition of the crossing. There is no question here but that the accident occurred after the construction of the crossing had been completed and was in full operation. The agreement, although it contemplated the construction of the crossing, was not limited to that and indeed contemplated the operation of the crossing as well.
REVERSED and REMANDED for further action consistent with this opinion.
W. SHARP and GOSHORN, JJ., concur.