256 F.Supp.2d 413 (2002)
HARLEYSVILLE MUTUAL INSURANCE COMPANY, Plaintiff,
v.
RELIANCE NATIONAL INSURANCE COMPANY and Ranger Insurance Company, Defendants.
No. 1:00 CV 00097.
United States District Court, M.D. North Carolina.
June 26, 2002.
*415 David Leonard Brown, Martha Perkowski Brown, Pinto Coates Kyre & Brown, PLLC, Greensboro, NC, for Plaintiff.
Larry I. Moore, II, Johnson Younce Moore & Moseley, L.L.P., Greensboro, NC, Joe E. Biesecker, Biesecker Tripp Sink & Fritts, L.L.P., Lexington, NC, for Defendants.

MEMORANDUM OPINION AND ORDER
SHARP, United States Magistrate Judge.
This matter is before the Court on cross motions for summary judgment filed by Plaintiff Harleysville Mutual Insurance Company (Pleading No. 177) and Defendant Ranger Insurance Company. (Pleading No. 179.) Briefing on the motions closed on December 18, 2001. The Court heard oral argument on March 13, 2002. David L. Brown and Martha P. Brown appeared on behalf of Harleysville Mutual Insurance Company, and Larry I. Moore, III appeared on behalf of Ranger Insurance Company.
Plaintiff Harleysville Mutual Insurance Company ("Harleysville") initiated this declaratory judgment action to resolve disputes over the rights and obligations of various parties arising out of a fatal collision between a freight train and a truck that occurred on November 15, 1997 on a portion of railroad owned by Norfolk Southern Railway Company ("Norfolk Southern"). The underlying facts and procedural history are not in dispute.
In 1997, the Davidson County Airport Authority ("DCAA") began constructing a new runway at the Davidson County Airport. It was determined early in the process that construction of the new runway would require the backfilling of low-lying areas and that the contractor would need to cross Norfolk Southern railroad tracks to move dirt from one section of DCAA's property to the construction site. Norfolk Southern granted DCAA permission to cross the railroad, and an agreement was entered into between Norfolk Southern and DCAA ("the railway crossing agreement") that contained the following conditions: that Norfolk Southern be allowed to furnish its own flagman to control traffic at *416 the crossing; that one of the existing crossings be permanently closed; that another crossing be upgraded for use by the construction vehicles and then removed immediately after completion of the project; and that DCAA procure a general liability insurance policy insuring Norfolk Southern with liability limits of up to $10 million per occurrence. (Pleading No. 179, Ex. 1.) The railway crossing agreement also contained provisions exculpating and indemnifying Norfolk Southern for liability for any negligence causing death, personal injury or property damage arising from railway operations at the crossing. Id.
DCAA hired The LPA Group of North Carolina, P.A., to oversee and supervise the construction of the new runway. Santaro Industries, Inc. ("Santaro") was selected as the general contractor, and entered a construction contract with DCAA on or about July 15, 1997. Santaro agreed to perform all work necessary to build the new runway, including filling in low-lying areas, and also assumed responsibility for upgrading, maintaining and restoring the railway crossing to be used by Santaro.
On November 15, 1997, a freight train struck a Santaro truck as the truck attempted to cross the railroad tracks. The driver of the truck, Ernest Blaine Settle, was killed and several Norfolk Southern employees aboard the train were injured. One wrongful death and three personal injury actions followed.
Harleysville filed this declaratory judgment action on January 31, 2000, requesting a determination of the rights and obligations of the parties in connection with the November 15, 1997 accident. Harleysville named as Defendants: its insured, DCAA; four other insurance companies alleged to provide or to have an obligation to provide insurance coverage for DCAA (Columbia Casualty Insurance Company, Reliance National Insurance Company, American Alliance Insurance Company and Ranger Insurance Company); three companies alleged to have an obligation to procure insurance for DCAA as an insured or additional insured (The LPA Group, Santaro, and Palmer & Cay, Inc.); Norfolk Southern, who claimed a right to contractual indemnity from DCAA as to all claims arising from the incident; and five entities with potential tort liability for the accident (Norfolk Southern, flagman Shane Woodard, Santaro, DCAA and LPA). The parties asserted cross-claims and counter-claims against each other.
The tort actions were settled, and on April 30, 2001, the parties entered a Settlement and Release Agreement resolving virtually all of the issues in this action, including those related to the validity of the indemnity agreement between DCAA and Norfolk Southern, the sole fault of Norfolk Southern and its agents, certain parties' alleged failure to procure proper insurance coverage, and certain tort claims between the parties. In an Interim Funding Agreement entered the same day, Harleysville, Ranger and Reliance agreed to contribute, on behalf of DCAA, $395,000 each toward the settlement of the tort actions, pending this Court's resolution of two unresolved issues. On May 9, 2001, the parties filed a Stipulation of Dismissal, dismissing with prejudice all claims against each other with the exception of the unresolved issues. (Pleading No. 154.) On June 14, 2001, this Court entered a Consent Order identifying the remaining issues for resolution. All parties except Harleysville, Ranger and Reliance were then released and their respective counsel were allowed to withdraw from this action. (Pleading No. 178, Ex. 6.)
In July 2001, counsel for Reliance advised the other parties that Reliance was in receivership in Pennsylvania and, pursuant to a May 29, 2001 Order by the Commonwealth *417 Court of Pennsylvania, all actions currently pending against Reliance in the Courts of the Commonwealth of Pennsylvania or elsewhere were stayed. Thereafter, Harleysville and Ranger completed discovery as between them and filed cross motions for summary judgment on the issues reserved for this Court's decision: (1) whether the Harleysville policy issued to DCAA provides coverage for DCAA's assumption of the liability of Norfolk Southern; and (2) how responsibility for the $1,185,000 in settlement funds should be allocated between Harleysville, Ranger and Reliance National Insurance Company.

Analysis
This action was filed pursuant to the court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332. In diversity cases, the court applies the substantive law of the situs state. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). North Carolina law applies to this litigation.
An insurance policy is a contract and like all other contracts, "the goal of construction is to arrive at the intent of the parties when the policy was issued." Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The intent of the parties may be derived from the language in the policy. Kruger v. State Farm Mut. Auto. Ins. Co., 102 N.C.App. 788, 789, 403 S.E.2d 571, 572 (1991). In the absence of ambiguity, courts have a duty to construe and enforce insurance policies by the plain, ordinary and accepted meaning of the language used. Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). "[W]here the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation," judicial construction is necessary. Allstate Ins. Co. v. Chatterton, 135 N.CApp. 92, 94, 518 S.E.2d 814, 816 (1999), review denied, 351 N.C. 350, 542 S.E.2d 205 (2000) (citation omitted). If there is uncertainty or ambiguity in the language of an insurance policy regarding whether certain provisions impose liability, the language should be resolved in the insured's favor. Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 240, 152 S.E.2d 102, 107 (1967). Exclusions from liability are not favored, and are to be strictly construed against the insurer. Southeast Airmotive Corp. v. U.S. Fire Ins. Co., 78 N.C.App. 418, 420, 337 S.E.2d 167,169 (1985).
When an insurance policy provides a definition of a term, that definition should be used. However, when no definition is provided in the policy, the nontechnical words have the same meaning as they would in ordinary speech. Woods at 506, 246 S.E.2d at 777. In determining the meaning of a term, the court may consider other portions of the policy and all clauses of the policy are to be construed, if possible, so as to bring them into harmony. "Each word is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction ...." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 355, 172 S.E.2d 518, 522 (1970).
Harleysville maintains that it did not intend to provide coverage for DCAA's agreement to indemnify Norfolk Southern for losses caused by Norfolk Southern's negligence, as evidenced by a policy exclusion concerning an insured's assumption of contractual liability for bodily injury or property damage caused by another. The relevant exclusion provides:
2. Exclusions.
This insurance does not apply to:
b. Contractual Liability

*418 "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
(Pleading No. 178, Ex. 1, at 9.)
Ranger maintains that the agreement between DCAA and Norfolk Southern falls into the category of an "insured contract," described in subsection 2, for which coverage is not excluded. Harleysville argues that the agreement does not fall within any policy definition of "insured contract."
Under the Harleysville policy, "insured contract" is defined, inter alia, as follows:
Section V DEFINITIONS
8. "Insured contract" means:
c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
... [or]
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
(Pleading No. 178, Ex. 1 at 20.)
In arguing that the railway crossing agreement does not meet the definition of "insured contract," Harleysville relies on subparagraphs c. and f. However, the parties' arguments focus more heavily on subparagraph f., which provides an alternative definition of "insured contract" and incorporates the same "construction operations" language used in subparagraph c. The Court will also focus on subparagraph f.
Subparagraph f. defines an "insured contract" as an agreement in which "you [the insured] assume the tort liability of another party to pay for `bodily injury' or `property damage' to a third person or organization." The following sentence then defines "tort liability" as "liability that would be imposed by law in the absence of any contract or agreement." (Pleading No. 178, Ex. 1 at 20.) Harleysville argues that "tort liability" as defined in subparagraph f. refers only to the tort liability of DCAA, i.e., coverage is limited to liability that DCAA would have had in the absence of the railroad crossing agreement. This interpretation fails, however, under a plain reading of subparagraph f. The plain language of the first sentence of subparagraph f. contemplates the insured's assumption of the tort liability of another party. Harleysville's argumentthat the very next sentence limits that liability to liability that the insured would have had in the absence of an agreementwould effectively cancel out the preceding sentence defining an insured contract as an agreement whereby the insured assumes the tort liability of another party. The only reasonable interpretation of subparagraph f. is one in which an "insured contract" is the contractual assumption by the insured of another's tort liability, which tort liability arises under law and not by the indemnitee's *419 contractual assumption of yet another party's liability. The Court rejects Harleysville's interpretation of subparagraph f.
As additional evidence that the railway crossing agreement is not an "insured contract," Harleysville references a form endorsement, Contractual Liability Limitation, Form no. CG21391188, often used in cases like this one. That form, when used, replaces the policy definition of "insured contract" with the following language:
"Insured Contract" means any written:
1. Lease of premises;
2. Easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad;
3. Indemnification of a municipality as required by ordinance, except in connection with work for the municipality;
4. Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; or
5. Elevator maintenance agreement.
(Pleading No. 178, App.)
Harleysville admits that it did not use the form endorsement in this case. Ranger, whose policy also lacked the unused endorsement, has conceded liability. Nevertheless, Harleysville argues that the language in the endorsement should inform the Court's interpretation of the policy language. An endorsement, even when attached to a policy, is merely part of the contract embodied in the entire policy, which must be construed as a whole. See Nationwide Mut. Ins. Co. v. Akers, 340 F.2d 150, 154 (4th Cir.1965); Lee R. Russ and Thomas F. Segalla, 2 Couch on Insurance § 21:21 (3d ed.1995) (hereinafter "Couch"). In the event of conflict with policy language, the language of an endorsement generally prevails. Couch § 21:22. However, Harleysville cites no authority for the proposition that a "conflict" between the endorsement and policy language may be found where, as here, the endorsement was not attached to or even referenced in the policy.
Harleysville further argues that, even if the basic definition of "insured contract" in subparagraph f. encompasses the railway crossing agreement, coverage is nevertheless defeated by an exception to the "insured contract" exception, which directs that:
Paragraph f. does not include that part of any contract or agreement:
(1) That indemnifies a railroad for `bodily injury' or `property damage' arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing
...
(Pleading No. 178, Ex. 1 at 20.) Harleysville argues that this language excludes coverage in this case because hauling fill dirt over the railroad crossing constitutes "construction operations" and the injuries occurred within 50 feet of the crossing.
Ranger argues that, at least in the context of subparagraph f.(1), the term "construction operations" must be construed more narrowly than urged by Harleysville. Even assuming the term "construction operations" generally can be interpreted to encompass the hauling of fill dirt over a railroad crossing to a construction site, f.(1) requires that the construction operations, not the injury, must occur within 50 feet of the railroad property and must affect the railroad crossing to be excluded from coverage.
The parties have not cited, and this Court has not located, any North Carolina cases interpreting this policy language. *420 However, Ranger cites two cases with similar facts and a highly persuasive analysis: Duplechin v. Missouri Pac. R.R., 670 F.Supp. 185 (W.D.La.1987) and Florida Municipal Power Agency v. Ohio Cos. Ins. Co., 714 So.2d 660 (Fla.Dist.Ct.App.1998). In both cases, the courts construed language virtually identical to subparagraph f.(1) of the Harleysville policy. In Duplechin, a motorist's vehicle collided with a cow that escaped from certain property when a contractor conducting brush clearing operations along a railway negligently knocked down a fence. The motorist sued the railroad, contractor and contractor's insurer, and the railroad filed a cross-claim against the contractor (ARCOA) and its insurer (Aetna) seeking indemnity pursuant to a contract between the contractor and the railroad. The contractor's insurer urged that the general liability policy did not provide coverage for the loss, based on an exclusion for
bodily injury or property damage arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, track, road beds, tunnel, underpass or crossing; but this exclusion does not apply to sidetrack agreements.
Id. at 189. The court rejected Aetna's assertion that this exclusion applied to the loss in question. First, the court found the brush clearing activities did not represent construction or demolition operations. Id. (emphasis added). Further, the court found the brush cutting operations did not clearly affect any of the parts of the railroad listed in the exclusion. Id. (emphasis added).
Similarly, in Florida Municipal, the court held that the identical exclusion would apply "only if the accident arose out of the construction or demolition of the crossing." 714 So.2d at 662. In that case, the plaintiff agreed to indemnify the railroad against injuries and property damage resulting from the presence and use of a railroad crossing. The policy contained an exclusion identical to that in issue in the case at bar. After construction of the crossing was complete, a delivery truck became stuck on the tracks and was hit by a train. Id. at 661. In the court's view, the language of the exclusion "would defeat recovery only if the accident arose out of the construction or demolition of the crossing." Id. at 662 (emphasis added).
This Court finds that the interpretation urged by Harleysville is not reasonable. This Court considers the analysis of the above-cited cases persuasive and finds that the most reasonable interpretation of subparagraph f.(1) is that it is intended to exclude coverage for injuries arising out of construction on or within 50 feet of railroad property and affecting a railroad crossing, but not for injuries arising from incidental use of the crossing pursuant to a construction project unrelated to the railroad. Under this interpretation, and on the facts of this case, Harleysville's argument for non-coverage must fail. There is no dispute that the only work ever done on the crossing itself (or within fifty feet of it) was that related to upgrading the crossing to accommodate truck traffic. At the time of the accident, the crossing upgrade had been completed and the trucks were simply hauling dirt to the airport runway construction site. Therefore, the Harleysville policy provides coverage for this accident. Even if the Court did not follow this precise analysis, the Court would find that, at best, the policy language relied upon by Harleysville is ambiguous and must be construed against the insurer and in favor of coverage.

Conclusion
In sum, this Court concludes that under the language of the Harleysville policy, *421 Harleysville intended to insure DCAA for bodily injury caused by Norfolk Southern, DCAA's indemnitee, arising from incidental use of the railroad crossing as opposed to construction work on or within 50 feet of the railroad and affecting the railroad.
Accordingly,
IT IS ORDERED that the motion for summary judgment of Harleysville Mutual Insurance Company (Pleading No. 177) is DENIED. IT IS FURTHER ORDERED that the motion for summary judgment of Ranger Insurance Company (Pleading No. 179) is GRANTED insofar as Ranger seeks a determination that Harleysville's policy provides coverage to DCAA for the assumption by DCAA of the liability of Norfolk Southern Railway Company under the agreement of October 14,1997.
Proceedings with respect to Reliance National Insurance Company apparently remain stayed pursuant to a Notice of Liquidation. (Pleading no. 185.) Reliance is a party herein, but the Court cannot proceed to adjudicate claims by or against Reliance. The Court invites consideration of counsel for Harleysville and Ranger concerning the form of judgment that should now be entered in this action, with specific reference to the stay of proceedings relating to Reliance. Briefs of the parties shall be filed within 30 days of this Memorandum Opinion and Order.